**UNITED STATES of America**

v.

**Michael F. LOGAR, Appellant.**

**No. 91–1123.**

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
Rule 12(6)
July 27, 1992.

Decided Sept. 4, 1992.

David A. Schwartz, Livingston, N.J., for appellant.

Michael M. Baylson, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before: SLOVITER, Chief Judge, MANSMANN and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

Michael Logar appeals from his conviction and sentence on one count of conspiracy to defraud the United States under 18 U.S.C. § 371 and eight counts of aiding and abetting in the filing of false income tax returns under 26 U.S.C. § 7206(2). Because, after full consideration, we find his other contentions to be without merit,[1] we limit our discussion to Logar's challenge to the sentence imposed by the district court.

### I.

*Procedural Posture and Factual History*

Logar and Jerome Cadden were indicted for conspiracy to defraud the United States and aiding the filing of false income tax returns. Shortly thereafter, Cadden pled guilty to the first three counts of the indictment. Following a jury trial, Logar was convicted on one count of conspiracy and eight counts of aiding in the filing of false income tax returns. Following a sentencing hearing, the district court sentenced Logar to five years imprisonment on the conspiracy count followed by eight consecutive one year sentences on the aiding and abetting counts for a total of thirteen years imprisonment. In addition, the court ordered the defendant to pay a $450 special assessment immediately as well as $10 mil-

---

1. In addition to his challenge to the sentence in the brief filed by counsel, Logar, in his *pro se* brief, claims prosecutorial and judicial misconduct, ineffective assistance of counsel, and insufficiency of the evidence.

lion in restitution to be paid according to a schedule set by the Probation Department. The charges grew out of Logar's involvement with American Energy Systems Leasing, Incorporated (AES), a tax shelter set up to take advantage of 1984 federal energy tax credits. Cadden and Logar, through AES, promoted a tax program which purported to give investing taxpayers an opportunity to enter the business of providing energy management machines to commercial businesses. Cadden and Logar prepared and distributed misleading brochures and made other misrepresentations with respect to the components and designs of the equipment, supplied by Logar's company, Soltech, which inflated the fair market value of the energy savings machines [2] the taxpayers would lease.[3] They also misrepresented the relationship between AES and Soltech as an independent buyer-seller relationship; misrepresented that the equipment would be placed in service by the time required under the Internal Revenue Code for eligibility for 1984 tax credit; and misrepresented the necessity of solar panel components to enable taxpayers to take the solar tax credit.

According to the government, this scheme caused it to lose approximately $25 million in tax revenues. In addition, it was estimated that the AES tax shelter cost the investors $10 million.

## II.

### Discussion

### A.

### Term of Imprisonment

■ Logar argues that the 13–year sentence imposed on him for his involvement in the fraudulent energy tax scheme is excessive, was not reflective of his character, history and condition, and was based on improper considerations. He contends

that the trial court failed to give due consideration to the factors which it was obliged to consider under the then-applicable statute, 18 U.S.C. § 3553. He notes that during the sentencing colloquy, the trial court referred only to the Pennsylvania Sentencing Code sentencing factors which are found in 42 Pa.Cons.Stat.Ann. § 9722 and never to the federal statute. Moreover, he notes that the 13–year sentence is far in excess of the 52–month sentence which he states would have been the applicable sentence under the Parole Commission Guidelines.

Inasmuch as Logar was sentenced under the law prevailing before the Sentencing Reform Act of 1984, we apply a much more limited review than we exercise over application of the Sentencing Guidelines. As we have previously explained under the pre-Guidelines standard, "[i]f a sentence is within the statutory limitation and there is no defect in the sentencing procedure, we do not interfere with the trial court's discretion as to the sentence imposed." *United States v. Felder*, 706 F.2d 135, 137 (3d Cir.1983).

Logar does not argue that the sentence was illegal or that it falls outside the statutory maximum. Although it is indeed surprising that the district court chose to enumerate the sentencing considerations under the Pennsylvania statute rather than under the federal statute in discussing the sentence it would impose, we cannot say that the Pennsylvania considerations were so far afield from those that would be relevant under 18 U.S.C. § 3553 that as a matter of law the district court failed in its legal obligation. In fact, this court has consistently held under pre-Sentencing Guideline law that the district court was not required to set forth on the record the reasons for its selection of a particular sentence. *See, e.g., United States v. Smith*, 839 F.2d 175, 181 (3d Cir.1988);

---

**2.** The energy savings system was represented to be a unique solar powered micro-processor which when installed at commercial and user sites would monitor and control energy usage and provide energy savings for the commercial end user.

**3.** For example, the two models offered to taxpayers were represented to have a fair market value of $50,000 and $80,000, but were purchased by AES from Soltech for $2,600 and $3,500 respectively, which exceeded the prices of $1,500 and $2,000 Soltech itself actually paid to the manufacturers of the equipment.

*United States v. Bacheler,* 611 F.2d 443, 450 (3d Cir.1979); *United States v. Del Piano,* 593 F.2d 539, 540 (3d Cir.) (per curiam), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979).

Thus, were the only issue before us Logar's objection to the length of the term of imprisonment, we would have no basis to disturb the district court's exercise of its discretion. However, since we must vacate the sentence for reasons stated hereafter, the district court will have an opportunity to reconsider the length of the sentence at the same time.

## B.

### *The Restitution Order*

Logar next challenges that portion of the district court's order requiring that he pay $10 million in restitution pursuant to the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3579–3580 (1982).[4] Under the VWPA at the time of the offenses committed by Logar, a district court could order a defendant convicted under Title 18 to pay "restitution to any victim of the offense." *Id.* § 3579(a)(1) (1982). In arriving at an amount to award, the district court was required to

> consider the amount of the loss sustained by any victim as a result of the offense, *the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents,* and such other factors as the court deems appropriate.

*Id.* § 3580(a) (1982) (emphasis added).

Pursuant to our supervisory powers, this court has required district courts "to make specific findings as to the factual issues that are relevant to the application of the restitution provisions of the VWPA." *United States v. Palma,* 760 F.2d 475, 480 (3d Cir.1985); *see also United States v.*

*Pollak,* 844 F.2d 145, 155–56 (3d Cir.1988) (remanding for resentencing because of lack of specific factual findings); *United States v. Johnson,* 816 F.2d 918, 924 (3d Cir.1987) (same).

Thus, we have required factual findings concerning (1) the amount of loss sustained by the victims, *Johnson,* 816 F.2d at 924, (2) the defendant's ability to make restitution, *id.; Palma,* 760 F.2d at 480; *Pollak,* 844 F.2d at 156, and (3) "how the amount of ... restitution imposed ... relate[s] to any loss caused by the conduct underlying the ... offenses for which [defendant] remain[s] convicted." *United States v. Furst,* 918 F.2d 400, 410 (3d Cir.1990).

In this case, the government concedes that the district court did not make specific findings as to Logar's financial ability to comply with the restitution order,[5] and that a remand is required. Moreover, the record does not include a finding that the amount of restitution ordered resulted from the offenses for which Logar was actually convicted. *See id.* at 409–10 (concluding that such a factual finding was necessary in light of Supreme Court's ruling that restitution could only be awarded for those losses "'caused by the specific conduct that is the basis of the offense of conviction.'") (quoting *Hughey v. United States,* 495 U.S. 411, 413, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990)).

Although the district court explicitly rejected the argument of both Logar and his wife that he should not be *imprisoned* because of the hardship his incarceration would cause his family, *see* App. at 14–15, 26, it did not make any factual findings as to "the financial needs and earning ability of the defendant and the defendant's dependents." 18 U.S.C. § 3580 (1982). Finally, while the district court accepted the government's suggestion that $10 million (which was the loss to investors estimated in the Presentence Investigation Report)

---

4. These two sections were recodified, effective November 1, 1987, at 18 U.S.C. §§ 3663–3664 respectively. *See* Sentencing Reform Act of 1984, Pub.L. No. 98–473, 98 Stat. 1987, 2010; *Hughey v. United States,* 495 U.S. 411, 413 n. 1, 110 S.Ct. 1979, 1981 n. 1, 109 L.Ed.2d 408 (1990).

5. While the government stated at sentencing that it did not "see the defendant has any financial wherewithal to make restitution," the district court stated that it was ordering restitution "just ... for the record." App. at 28.

would constitute an appropriate amount of restitution, *see* App. at 28, the court did not identify any record support for the loss to those victims. It follows that a remand is necessary.

The government has chosen to advise this court that it will request the district court on remand to reimpose the full $10 million restitution order "even though [Logar] is currently virtually penniless." Appellee's Brief at 15. We take this opportunity to provide guidance to the district court in considering this issue on remand.

■ The government reads the statement in this court's opinion in *United States v. Sleight*, 808 F.2d 1012, 1021 (3d Cir.1987), that "[r]estitution may not be ordered in an amount that a defendant cannot realistically pay," as suggesting that a court cannot impose an order for restitution on an indigent defendant. The government's interpretation is, quite simply, without foundation. There may be a significant difference between a defendant's current financial condition and a realistic view of the defendant's ability to repay in the future. In this respect we agree with all the other circuits which have addressed the issue and have concluded that indigency at the time of sentencing is not a bar to ordering a defendant to pay restitution in the future. *See United States v. Brown*, 744 F.2d 905, 911 (2d Cir.), *cert. denied*, 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984); *United States v. Bruchey*, 810 F.2d 456, 461 (4th Cir. 1987); *United States v. Ryan*, 874 F.2d 1052, 1054 (5th Cir.1989); *United States v. Mounts*, 793 F.2d 125, 128–29 (6th Cir.), *cert. denied*, 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986); *United States v. House*, 808 F.2d 508, 510 (7th Cir.1986); *United States v. Owens*, 901 F.2d 1457, 1459 (8th Cir.1990); *United States v. Keith*, 754 F.2d 1388, 1393 (9th Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 93, 88 L.Ed.2d 76 (1985); *United States v. Sunrhodes*, 831 F.2d 1537, 1546 (10th Cir.1987); *United States v. Stevens*, 909 F.2d 431, 435 (11th Cir.1990); *cf. Vela–Fossas v. United States*, No. 90–1183, 1990 WL 443937, at *3, 1990 U.S.App. LEXIS 16970, at *10 (1st Cir. Sept. 7, 1990) (memorandum opinion) (rejecting argument that "a sentencing court lacks the authority to impose a fine or restitution obligation beyond a defendant's then financial means").

■ Nothing in *Sleight*, 808 F.2d 1012, or its predecessor *Palma*, 760 F.2d 475, suggests that the VWPA precludes restitution against an insolvent defendant. As other courts have noted, "a defendant's financial situation may well change in the future, making him [or her] able to pay some if not all the restitution ordered." *Ryan*, 874 F.2d at 1054; *see also Brown*, 744 F.2d at 911 (indigency may be temporary condition). Therefore, on remand, the district court should make specific findings of fact not only concerning Logar's current financial status but also on his ability to earn income in the future before it arrives at an appropriate amount of restitution. *See United States v. Rogat*, 924 F.2d 983, 985–86 (10th Cir.) (noting that defendants had great income earning potential), *cert. denied*, —— U.S. ——, 111 S.Ct. 1637, 113 L.Ed.2d 732 (1991).

■ On the other hand, we do not agree with the government's contention that even though Logar's current prospects for repaying $10 million are slim, a restitution order of this size is appropriate because it ensures that if Logar fortuitously "comes into" some money, the victims of his crime will be compensated.

The government posits the admittedly remote possibility that Logar may come into funds through such "fortuitous events ... as an inheritance or stroke of luck." Appellee's Brief at 21. The government relies heavily on *United States v. Fountain*, 768 F.2d 790, 802–03 (7th Cir.), *modified*, 777 F.2d 345 (7th Cir.1985), *cert. denied*, 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986), where the Seventh Circuit upheld an order of restitution against three indigent inmates serving life sentences. In that case, the court approved the district court's reasoning that the inmates "might have a story to sell to a publisher or broadcaster [about their murderous escapades]." 768 F.2d at 803. According to the court, this was "a proper ground for ordering restitu-

tion beyond the defendants' present or foreseeable ability to pay." *Id.*

In later precedent, however, the same court of appeals limited *Fountain* to the facts of that case. In *United States v. Mahoney*, 859 F.2d 47 (7th Cir.1988), the court considered a restitution order of over $280,000 against a defendant who possessed no tangible assets and had a $30,000 annual salary. The government, as it does here, urged the court to uphold the full restitution order because of the possibility of an unforeseeable change in circumstance that might put the defendant in a position to pay the full amount. The court of appeals rebuffed the government's argument, stating that "[t]he prospect of the defendant's winning a lottery—present in any case—is too remote a possibility to justify the restitution order in this case." *Id.* at 51 n. 6. The court also noted that "in *Fountain* the [trial] judge articulated a reasonable rationale for ordering full restitution, and a factual basis in the record supported the stated rationale." *Id.*

The *Mahoney* court further rejected the government's argument that a court may disregard defendant's ability to pay in ordering full restitution on the ground that defendant's ability to pay would be considered under 18 U.S.C. § 3579(g)[6] if the defendant fails to make restitution. The Seventh Circuit's language is particularly applicable to this case as well:

[A]t the time the court orders restitution it is most paramount that the defendant, in the all-important rehabilitative process, have at least a hope of fulfilling and complying with each and every order of the court. Thus, an impossible order of restitution, as made in this case, is nothing but a sham, for the defendant has no chance of complying with the same, thus defeating any hope of restitu-

tion and impeding the rehabilitative process.

*Mahoney*, 859 F.2d at 52.[7] Further, "had Congress intended that the defendant's ability to pay be considered only after a defendant's nonpayment, it could very easily have mandated that the court direct the payment of full restitution in every case subject to a later revision of the said order should the defendant fail to comply...." *Id.; see also United States v. Studley*, 892 F.2d 518, 533 (7th Cir.1989).

Other circuits have also rejected the position the government urges in this case. In *United States v. Mitchell*, 893 F.2d 935 (8th Cir.1990), the court rejected the "lottery" argument noting that "[t]he government's logic ignores the serious consequences to defendant for his or her failure to fulfill his or her restitution order." *Id.* at 936 n. 1. In ordering the district court to "fashion a payment schedule that a defendant can be expected to meet," that court specifically recognized that "[i]f, at some later time, the defendant's financial condition somehow changes, either the government or the defendant can return to the sentencing court and ask it to modify its order." *Id.* at 936.

■ The Tenth Circuit has noted that "[a]lthough a defendant's indigency is not a bar to restitution, ... [t]he possibility of repayment ... cannot be based solely on chance." *Rogat*, 924 F.2d at 985 (citing *Mitchell* with approval); *see also United States v. McIlvain*, 967 F.2d 1479, 1481 (10th Cir.1992) (noting principle that potential for restitution cannot be based on mere chance and vacating restitution order because district court failed to take into consideration defendant's ability to pay); *United States v. Grimes*, 967 F.2d 1468, 1473 (10th Cir.1992) (vacating restitution

6. Under section 3579(g) (recodified at 18 U.S.C. § 3663(g)), when deciding whether to revoke a defendant's probation or parole because of failure to pay restitution, a district court shall consider the defendant's employment status, earning ability, financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay.

18 U.S.C. § 3579(g) (1982).

7. *See also* Note, *Victim Restitution in the Criminal Process: A Procedural Analysis,* 97 Harv. L.Rev. 931, 940 (1984) ("Most courts, recognizing that the frustration of a defendant who is ordered to pay an amount exceeding his financial resources may adversely affect his prospects for rehabilitation, gear the amount of restitution to the offender's ability to pay.").

**964**

order because of lack of evidence that "either defendant had the capacity to earn sufficient income following release that would permit [restitution] payments"). This line of authority is in accord with, not contrary to, our statement in *Sleight* that restitution is only appropriate in an amount that the defendant can realistically be expected to pay. *See* 808 F.2d at 1021. Thus, if it is realistic that defendant may inherit a substantial sum from a well-off relative or has a story to write that will be a bestseller, then the district court would be entitled to consider these possible additional sources of income in fashioning a restitution order. On the other hand, we will not put the court in the lottery business.

Under the VWPA a "district judge [must] balance the victim's interest in compensation against the financial resources and circumstances of the defendant—all while remaining faithful to the usual rehabilitative, deterrent, retributive and restrictive goals of criminal sentencing." *Bruchey*, 810 F.2d at 458. We are not prepared to write the requirement that the district court consider the defendant's financial resources out of the statute.

### III.

#### Conclusion

For the foregoing reasons, we will affirm the judgment of conviction but will vacate the district court's sentence and remand for further proceedings consistent with this opinion.