

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-12-1994

# United States of America v. Hallman

Precedential or Non-Precedential:

Docket 93-1414

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"United States of America v. Hallman" (1994). *1994 Decisions.* Paper 13.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/13

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT


No. 93-1801


UNITED STATES OF AMERICA,
                    Appellee,

        v.

REGINALD HALLMAN,
                    Appellant.


Appeal from the
United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 93-00104-01)


Submitted Under Third Circuit LAR 34.1(a)
May 3, 1994

(Filed: May 13, 1994  )

Before: SLOVITER, Chief Judge, HUTCHINSON AND SEITZ, Circuit
Judges.


Jerry S. Goldman, Esquire
Jerry S. Goldman & Associates, P.C.
1520 Locust Street, 10th Floor
Philadelphia, Pennsylvania 19102
    Attorney for Appellant

Michael R. Stiles, United States Attorney
Walter S. Batty, Jr., Assistant
   United States Attorney, Chief of Appeals
Virgil B. Walker, Assistant
   United States Attorney

Office of the United States Attorney
615 Chestnut Street
Philadelphia, Pennsylvania 19106
     Attorneys for Appellee

OPINION OF THE COURT

SEITZ, Circuit Judge.

**I.**

Reginald Hallman ("Appellant") appeals a sentence imposed on him by the district court.  The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231.  This court has jurisdiction under 18 U.S.C. § 3742(a).

**II.**

On September 9, 1992, appellant used a stolen check to pay for a room at the Korman Suites in Philadelphia, Pennsylvania. At the request of federal investigators, local authorities arrested the appellant and located stolen mail after he consented to a search of his vehicle.

Appellant pled guilty to a state forgery charge and was sentenced to three years probation and restitution of $6,400. Appellant remained incarcerated, however, because he was identified as a fugitive from justice in Atlanta, Georgia and having charges pending against him in Delaware County (PA) Court.

On February 11, 1993, appellant was taken into federal custody pursuant to a four-count federal indictment.  It appeared that, using various aliases, appellant deposited stolen and forged checks into an account and then withdrew the funds therefrom (Count 1).  One of the checks deposited in this account was a check made out to the Internal Revenue Service (Count 2).

Appellant forged one of the stolen checks he possessed to purchase an automobile in the State of Alabama for approximately $14,000 (Count 3). Lastly, the appellant was found to have been in possession of approximately sixty-one stolen pieces of mail (Count 4).

Appellant entered a plea of guilty on all four counts. After receipt of the Pre-Sentence Report and a hearing thereon, the defendant was duly sentenced. He now appeals.

**III.**

The standard and scope of review of the district court's interpretation and application of the Sentencing Guidelines is plenary. United States v. Murillo, 933 F.2d 195, 196 (3d Cir. 1991). However, where the district court's application is based on factual analysis, we will reverse the district court only if its conclusion is clearly erroneous. United States v. Ortiz, 878 F.2d 125, 127 (3d Cir. 1989).

**IV.**

**A.  Calculation of Loss**

A search of the appellant's car after his arrest on the Korman Suites' forgery charge resulted in the recovery of sixty-one pieces of stolen mail, mostly checks, that underlie Count 4.' Appellant objects to the calculation of "loss" in this count, which added $25,152.36 to the loss amount and one (1) point to his offense level. Under USSG § 2F1.1, adjustments are made to the base offense level if the monetary loss exceeds certain

---

'The sixty-one pieces of mail included: fifty checks, six bundles of blank checks, and five credit cards.

levels. Under § 2F1.1(a), the base offense level is six. The Probation Officer calculated the losses to be $73,419.36. This was arrived at by adding the losses suffered by the bank in Count 1 ($34,282), the amount of the check in Count 3 ($13,985), plus the face value of the stolen mail in Count 4 ($25,152.36). Under USSG § 2F1.1(b)(1)(G) six points were added to the base level because the "loss" exceeded $70,000.

The district court determined that the "loss" in regard to these stolen checks should be determined under USSG § 2B1.1.[2] The district court referred to Application Note 2 to USSG § 2B1.1 as applicable. The note defines "loss" as

> the value of the property taken, damaged, or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue. . . . Examples: (1) In the case of a theft of a check or money order, the loss is the loss

---

[2]To avoid confusion in considering the arguments advanced by appellant concerning the calculation of the offense score, some clarification as to which Guidelines sections are being utilized is necessary. In our four-count indictment, there are both fraud and theft-oriented charges. Under USSG § 3D1.2(d), conduct that results in offense levels being determined under Chapter 2 (e.g., theft and fraud) are to be "grouped" together. Once grouped together, USSG § 3D1.3(a) requires that the highest offense level of the group is to be used. Application Note 3 to § 3D1.3 states that "[i]f the counts in the Group are covered by different guidelines (e.g., theft and fraud), use the guideline that produces the highest offense level." In this case, both guidelines, §§ 2B1.1 and 2F1.1, result in the same score--12 points--and either could have been used to calculate the score. The use of these guidelines to determine the score, however, does not dispose of the need to refer to the appropriate guideline for the calculation of loss. For example, although Hallman's indictment groups fraud and theft charges, we must refer to §2B1.1 to calculate the loss in regard to the theft charges (e.g., Count 4). See 18 U.S.C. § 1708 (referring to § 2B1.1 of Guidelines). This amount is then applied to the guideline used to calculate the offense level.

that would have occurred if the check or money order had been cashed.

The face value of the stolen checks was $25,152.36.

A recent opinion of this court supports the calculation of loss based on the face value of the checks. In <u>United States v. Cianscewski</u>, 894 F.2d 74 (3d Cir. 1990), a couple was convicted of possessing stolen mails and selling stolen treasury checks. The amount of loss in regard to the checks was challenged on appeal. The defendants argued that the amount of loss should have been the sum of the amounts that were received for the checks upon resale. The court disagreed and held that "[w]hen a check is stolen, the cost to the party who ultimately bears the loss is obviously the face value of the check. . . . Under such circumstances . . . a court does not err by valuing losses at replacement cost to the victim--in this case the face value of the stolen checks." <u>Id.</u> at 80.

Appellant argues that some of the checks had no economic value because they were not valid either as a result of the passage of time or because payment on the checks logically would have been stopped. This argument erroneously applies USSG § 2B1.1. Application Note 2 specifically states that "loss" is "the loss that <u>would have occurred</u> if the check or money order had been cashed." (Emphasis added). Appellant's crime of theft of the checks was completed, although his criminal conduct was only partially completed.

Appellant argues that the Government failed to show an intent by him to use the checks and thus, the amount should be

lowered by applying USSG § 2X1.1 relating to "attempts." In an effort to require the government to show intent, the appellant cites United States v. Kopp, 951 F.2d 521 (3d Cir. 1992). The appellant's reading of this case is in error. The court in Kopp was distinguishing theft and fraud. The court determined that when calculating loss in a fraud context, the calculation of loss should be based on "actual or intended harm." Id. at 529. The court, however, said that when calculating the loss in the theft context, applying USSG § 2B1.1, one need only apply the "simple `amount taken' rule" because "all thefts involve an intent to deprive the victim of the value of the property taken." Id.. The charge in Count 4 warrants application of § 2B1.1, and we must therefore examine "loss" in the theft context. The district court's calculation of the amount of loss involved in Counts 1, 3 and 4 is not clearly erroneous.

**B.      Related Offenses**

Appellant next challenges the calculation of his criminal history score. The district court adopted the Probation Officer's career history calculation of thirteen points that placed the appellant in a category VI classification. Appellant appeals the calculation on the ground that the Pre-Sentence Report contained two calculation errors when it counted related offenses separately.

**1.      Consolidation for Sentencing**

First, appellant argues that two prior sentences, listed at paragraphs 51 and 52 of the Pre-Sentence Report, were "related" within the meaning of USSG § 4A1.2(a)(2) because they

were consolidated for sentencing. Under Application Note 3 to §
4A1.2,

> [p]rior sentences are not considered related if they
> were for offenses that were separated by an intervening
> arrest. . . . Otherwise, prior sentences are
> considered related if they resulted from offenses that
> (1) occurred on the same occasion, (2) were part of a
> single common scheme or plan, or (3) were consolidated
> for trial or sentencing. . . .

The district court determined that there was not a consolidation
for sentencing purposes and adopted the Pre-Sentence Report's
calculation.

After examining two case action summaries from the State
of Alabama, we conclude that there may have been consolidation
for sentencing, but that this conclusion does not affect our
result as we find other grounds to sustain the separate
calculation of the offenses based on our interpretation of
Application Note 3. The first sentence of that Application Note
states that "[p]rior sentences are not considered related if they
were for offenses that were separated by an intervening arrest
(i.e., the defendant is arrested for the first offense prior to
committing the second offense)." The appellant was arrested for
the offenses listed at paragraphs 51 and 52 of the Pre-Sentence
Report on different dates. We read the "otherwise" in the Note to
mean that if there is not an intervening arrest, then there may
be other ways in which to find consolidation. We need not
consider those alternatives, however, as the district court's

counting of each separate offense was proper under our reading of Application Note 3.[3]

## 2. Common Scheme or Plan

Appellant's second "relatedness" contention is that his conviction for the forgery of the check to the Korman Suites was improperly counted because it was "related" to the conduct in Count 4. The forgery conduct consisted of the appellant's forging of a check, numbered 295 with the name "James La Roux" emblazoned on the face. The check was one of a sequential series of checks with Mr. La Roux's name on them. The appellant contends that the prior sentence he received for the forgery is related to the present offense of possession of stolen mail because it is part of a common scheme or plan. Under USSG § 4A1.2(a)(2), "[p]rior sentences imposed in unrelated cases are to be counted separately." According to Application Note 3 to § 4A1.2, prior sentences are related if they "(2) were part of a single common scheme or plan . . . ."

---

[3]Our reading of Application Note 3 finds support in a recent decision in United States v. Gallegos-Gonzalez, 3 F.3d 325 (9th Cir. 1993):

> [T]he first question is always whether the underlying offenses were punctuated by an intervening arrest; by the logic and ordering of Note 3, that inquiry is preliminary to any consideration of consolidated sentencing. The use of the word "otherwise" indicates that sentence consolidation is relevant only in the absence of intervening arrests. Properly read, Note 3 instructs that whenever offenses are separated by intervening arrests, the sentences for those offenses are unrelated regardless of whether sentencing was consolidated.

Id. at 327

On its face, the argument made by appellant is an erroneous application of the Guidelines because as a general rule, USSG § 4A1.2(a)(2) applies to the relatedness between prior sentences, not prior sentences to the present offense. E.g., United States v. Beddow, 957 F.2d 1330, 1337 (6th Cir. 1992); United States v. Walling, 936 F.2d 469, 471 (10th Cir. 1991). Therefore, because we have only one prior sentence here, there can be no relatedness analysis under § 4A1.2(a)(2).

The appellant, however, suggests that under USSG § 4A1.2(a)(1), the prior sentence and present offense are related because of the requirement that the prior sentence be imposed "for conduct not part of the instant offense." Appellant's argument is that the conduct that led to his state sentence for forgery is part of the same scheme and conduct that led to his federal indictment on the count of possession of stolen mail.

Although neither party has cited a case that would be of assistance, there are several decisions from other circuits that throw some light on the issue. The Sixth Circuit stated that "the appropriate inquiry is whether the `prior sentence' and the present offense involve conduct that is severable into two distinct offenses." Beddow, 957 F.2d at 1338. The Sixth Circuit's test was developed in response to the Tenth Circuit's decision in United States v. Banashefski, 928 F.2d 349 (10th Cir. 1991). In Banashefski, the defendant, a felon, placed a shotgun in the trunk of a stolen car and then drove the car away. He was charged by the state with possession of a stolen car, and was charged by the federal government for possession of a firearm by

a felon. The district court determined that there were two distinct possessory acts that were severable. The facts in our case constitute a closer call. Recognizing that possession of stolen mail is a distinct offense, we also note that possession of stolen mail in the form of blank checks suggests that additional conduct may be required for the actor to obtain ill-gotten gains. We do not adopt the Sixth Circuit's "severability test" based on our facts. Although Banashefski could have possessed the firearm or the car without the other and been charged with an offense for each, appellant here could not have forged a check until he had stolen the checks.

Although most conduct may be separable into distinct offenses, we believe the focus of the inquiry is on the conduct and whether that conduct is related--is it part of a common scheme or plan? We agree with the Seventh Circuit's view that "[t]he Sentencing Commission . . . intended a broad reading of `related cases.'" United States v. Connor, 950 F.2d 1267, 1271 (7th Cir. 1991) (finding that sentences given for federal conviction and state conviction were related when they were brought pursuant to one arrest, despite separate trials).

In determining whether there was a common scheme or plan, intent of the defendant is a crucial part of the analysis. In the Tenth Circuit's decision in United States v. Coleman, 947 F.2d 1424 (10th Cir. 1991), cert. denied, 112 S. Ct. 1590 (1992), a defendant was being prosecuted on drug charges. The court held that a sentence for retaliation by the defendant against a witness during a prior trial was not part of the scheme or plan

for which the defendant was presently being prosecuted because the retaliation took place after the completion of the drug offenses and therefore, could not be considered "`intimately related'" to the drug charges as the defendant had suggested. Id. at 1429-30.

The Seventh Circuit's decision in United States v. Ali, 951 F.2d 827 (7th Cir. 1992), decided a case factually similar to the present one in which intent played a key role. In Ali, a burglar argued that two prior convictions were related because they were part of a common scheme. The two convictions were for the robbery of a supermarket and the forgery of a money order that was stolen during that robbery. To quote at length, for it is quite relevant to our particular facts, the court in refusing to find a common scheme or plan and relatedness, stated that:

> No one robs without intending to obtain value from what is taken, and if that is a financial instrument on which a signature must be forged if it is to be cashed or otherwise used to the robber's profit the forgery could easily be thought a part of a single scheme or plan. But "scheme" and "plan" are words of intention, implying that the forgery and the robbery have been jointly planned, or at least that it have been evident that the commission of one would entail the commission of the other as well. If the decision to commit forgery arose only after the robber discovered what he had taken, the forgery would be no more a part of the scheme or plan to rob than would be retaliation against a witness of whose existence the retaliator was unaware when he planned the crime to which the witness has testified; and Coleman even narrowly read would therefore govern. A crime merely suggested by or arising out of the commission of a previous crime is not . . . related to the earlier crime in the special sense of being part of a common scheme or plan.

Id. at 828 (emphasis added).

We hold that the appellant's possession of this stolen mail was part of a common scheme and plan and that the prior sentence for the forgery was for conduct that is related to the offense in Count 4. Our conclusion rests on the fact that all of the stolen mail recovered in the search of the appellant's vehicle was in the form of checks or credit cards and that the check forged to Korman Suites was from a sequence of blank checks found within the stolen mail. Therefore, it is reasonable to infer that the mail was stolen to find checks or other instruments that could be converted to use through forgery.

Because we hold that the forgery conviction and Count 4 are parts of a common scheme or plan, the appellant's criminal history score warrants a reduction by one point. This will result in a criminal history score of twelve and a Category V criminal history classification.[4]

## C.    Restitution

The appellant's final contention is that the district court abused its discretion in requiring that restitution be made in the amount of $34,282 to the bank involved in Count 1 because it failed to make specific factual findings as to his ability to pay.

Restitution is authorized by the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663(a), and is incorporated into the Sentencing Guidelines at § 5E1.1. Our review is plenary over whether an award is permitted, but we review the specific

---

[4]Thus, a sentencing range of 27–33 months will result as opposed to 30–37 months.

award for abuse of discretion. United States v. Seligsohn, 981 F.2d 1418, 1421 (3d Cir. 1992).

In exercising its supervisory powers, this court has required the district courts to make "findings as to the factual issues that are relevant to the application of the restitution provisions of the VWPA." United States v. Palma, 760 F.2d 475, 480 (3d Cir. 1985). The district court is required to

> consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

Id. (quoting 18 U.S.C. § 3580(a)) (emphasis added). The district court determined that the appellant could pay the amount proscribed within the period of his supervised release. Our review is limited to "whether the record supports the finding." United States v. Sleight, 808 F.2d 1012, 1021 (3d Cir. 1987).

The district court did not impose a fine on appellant citing his "inability to pay." Indigency at the time of sentencing is, however, not a bar to ordering the appellant to pay restitution. United States v. Logar, 975 F.2d 958, 962 (3d Cir. 1992) (citing ten other circuits in accord with this rule). The order of restitution, on the other hand, may not be based on some future fortuitous event that may befall the appellant, but must be based on realistic expectations. Id. at 962-64; cf. United States v. Mitchell, 893 F.2d 935, 936 n.1 (8th Cir. 1990) (rejecting government's argument that a "high amount of

restitution is proper on the chance that the defendant may win the lottery").

The district court based its order of restitution on the Pre-Sentence Report. The Report includes an analysis of the financial impact on the victim, the bank, and details the appellant's physical and mental health, education, vocational skills, and financial ability to pay. Specific findings by the district court determined that the appellant obtained a high school diploma; claimed to have obtained thirty-six college credits at the University of Alabama; was given an honorable discharge from the military for medical reasons; was once a part-owner of a hair salon in Philadelphia that generated a monthly gross income of $1,500; earned $300 a night from 1990 until 1992 as a private disc jockey; and had worked for his stepfather's business assisting in the design and installation of security systems. The district court also adopted the findings of the report that found the appellant had purchased a 1991 Ford Mustang for $20,750 cash in 1991 and sold the same car in 1992 for $13,000. Finally, the report noted that he could make $.15-.25 per hour and possibly up to $1.25 per hour while incarcerated that could be applied to the amount of restitution ordered. The district court stated at sentencing that "the defendant by education and natural ability that God and his parents gave him has the capacity to earn lawful income."

To sustain the district court's order of restitution, the appellant must "realistically [be able to] pay [the amount] within the five year period." Sleight, 808 F.2d at 1021. The

record supports a reasonable expectation that the appellant will be able to make restitution.  Putting aside the large amount of money that he received for the sale of his car (or the amount he paid for it in cash), the appellant's educational level and past work experience indicate an ability to obtain gainful employment.[5]

In light of the specific findings made by the Probation Officer that were adopted by the district court, and the time afforded the appellant in which to pay the amount, we cannot say that the district court's restitution order constituted an abuse of its discretion.

## V.

We approve the district court's calculation of the amount of loss involved, the separate calculation of the offenses listed in paragraphs 51 and 52 of the Pre-Sentence Report, and the order of restitution.  We will vacate the district court's calculation of the appellant's criminal history score as a result of our holding that the forgery charge and Count 4 were part of a common scheme or plan and should not have been counted separately. The

---

[5]We note that 18 U.S.C. § 3663(g) authorizes the court to "revoke probation or a term of supervised release . . . or hold a defendant in contempt pursuant to section 3583(e) if the defendant fails to comply with such order."  Although the ordering of restitution may not be an exact science, we also note that § 3663(g) also permits the court, in determining whether to revoke probation or supervised or to hold in contempt, may "consider the defendant's employment status, earning ability, financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay."  We read this section as granting the court discretion to modify the restitution order in the future depending on the defendant's circumstances.

sentence of the district court will be vacated and the matter will be remanded to the district court for sentencing consistent with this opinion.