46 F.3d 1129
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark Gregory YOUNG, Defendant-Appellant.
 No. 94-5173.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 4, 1994.
Decided Jan. 13, 1995.
 
 C. Timothy Sullivan, Jr., Greenville, SC, for Appellant.
 David Calhoun Stephens, Assistant United States Attorney, Greenville, SC, for Appellee.
 J. Preston Strom, Jr., United States Attorney, Greenville, SC, for Appellee.
 Before ERVIN, Chief Judge, RUSSELL, Circuit Judge, and MacKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The defendant was indicted for knowingly and intentionally possessing checks, credit cards, and other matter which had been stolen from the United States Mail. He plead guilty to all five counts of the indictment and was sentenced to a concurrent term of forty-one (41) months.
 
 
 2
 The only issue defendant raises on appeal is whether the district court correctly computed his sentence under the United States Sentencing Guidelines. The defendant charges that the court erred in calculating his offense level under the guidelines by considering the face value of the stolen checks rather than the victims' actual loss as the "loss" resulting from the offense. Because the face value of the checks was greater than $200,000 but less than $350,000, the district court enhanced defendant's base offense level by ten (10) levels pursuant to U.S.S.G. Sec. 2B1.1(b)(1)(K).
 
 
 3
 It is undisputed that the face value of all of the stolen checks was $202,500.95 but that only $11,000 of that amount had actually been cashed. The defendant contends the $11,000 in negotiated checks constitutes the applicable loss, and, consequently, an enhancement of only five (5) offense levels should have been applied.
 
 
 4
 We find this issue settled by Application Note 2 to Sec. 2B1.1 which states:
 
 
 5
 "Loss" means the value of the property taken, damaged or destroyed.... Examples: (1) In the case of a theft of a check or money order, the loss is the loss that would have occurred if the check or money order had been cashed....
 
 
 6
 U.S.S.G. Sec. 2B1.1, comment. (n.2). In Stinson v. United States, 113 S.Ct. 1913 (1993), the Supreme Court held that the Sentencing Guidelines Manual's commentary interpreting or explaining a guideline is authoritative unless it violates federal law or is inconsistent with, or is a plainly erroneous reading of that guideline. Here, the commentary does not run afoul of the Constitution or a federal statute and is not plainly erroneous or inconsistent with Sec. 2B1.1. Because the commentary is a binding interpretation of the term "loss," the district court correctly applied the appropriate enhancement under Sec. 2B1.1(b)(1)(K). See United States v. Hallman, 23 F.3d 821, 823-24 (3d Cir.1994).
 
 
 7
 Though not raised by defendant's counsel, nor by the defendant in a pro se brief permissibly filed by him, we are nevertheless constrained to consider two other issues relevant to the computation of defendant's sentence.
 
 
 8
 At the time of his arrest the defendant had in his possession a photocopy of one of the stolen checks which was in the amount of $108,149.40. Upon examination of the record, we note that the district judge examined this area in great detail.* At the sentencing hearing, the defendant testified that he had never possessed the actual check. This testimony was in direct conflict with the testimony of Postal Inspector Raymond Ezell that defendant had previously informed Ezell that he had possessed the original check, which he knew had been stolen from the mail, but after considering ways and means to negotiate it, he had returned it to California. The judge determined Inspector Ezell's testimony to be more credible than defendant's and found that Young had indeed possessed the original check. Because Sec. 2B1.1 specifically applies to the "receiving, transporting, transferring, transmitting, [and] possessing" of stolen property, the district court did not err by including the value of the duplicate check in the loss calculation under Sec. 2B1.1(b)(1). At the very least, the evidence reveals that Young received the check in the mail, knowing it was stolen, possessed it for a period of time, and then sent the check back through the mail to his colleague in California.
 
 
 9
 When arrested on July 15, 1994, in Greenville, South Carolina, defendant had in his possession several checks, which had been stolen on three separate occasions from postal vehicles in Greenville. Additionally, defendant possessed checks stolen from the mail in Baltimore, Maryland, and evidence of a check for $108,149.40 stolen from the mail in California. Also included in the defendant's stash of stolen papers were false driver's licenses in many different names but all with Young's photograph attached, credit cards, and false identification documents.
 
 
 10
 In his presentence interview, Young acknowledged responsibility for the Greenville thefts from postal vehicles. In addition, he informed Inspector Ezell that the check for $108,149.40 had been stolen from the mail in California. Later it was determined that Young was wanted in Baltimore for breaking into postal vehicles and stealing large quantities of mail. However, Count One of the indictment charges only that Young "... did unlawfully have in his possession two pieces of mail (checks) addressed to Betty Dean Garrett ... and Ann R. Voss ... which had been stolen ... from the mail" in violation of 18 U.S.C. Sec. 1708. Accordingly, we must determine whether the district court properly considered the value of all the stolen checks found in Young's possession when the indictment, and only in Count One thereof, charges Young with possession of two specific instruments.
 
 
 11
 The United States Sentencing Commission Guidelines Manual, in its Introduction and General Application Principles, provides the following:
 
 
 12
 Sec. 1B1.3. Relevant Conduct (Factors that Determine the Guideline Range)
 
 
 13
 (a) Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level ... shall be determined on the basis of the following:
 
 
 14
 (1)(A) all acts and omissions committed ... by the defendant; and
 
 
 15
 ....
 
 
 16
 (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) ... above, and all harm that was the object of such acts and omissions....
 
 
 17
 U.S.S.G. Sec. 1B1.3. This court recently interpreted this provision in United States v. Jones:
 
 
 18
 Section 1B1.3 of the guidelines permits district courts to take "relevant conduct" into account in determining a defendant's sentence under the guidelines. As the commentary to this section explains, the "principles and limits of sentencing accountability" are not always the same as those of criminal liability. U.S.S.G. Sec. 1B1.3 application note 1. Convicted defendants can be held accountable for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured or wilfully caused by the defendant...." U.S.S.G. Sec. 1B1.3(a)(1)(A). The defendant need not be convicted of the charges constituting relevant conduct for him still to be held accountable for them. Yet the government must establish the existence of these other incidents by a preponderance of the evidence. Whether the government has successfully shouldered its burden of proof is a question of fact, which we review only for clear error.
 
 
 19
 United States v. Jones, 31 F.3d 1304, 1316 (4th Cir.1994) (citations omitted).
 
 
 20
 Here, the defendant admitted that the checks found in his possession had been either stolen by him or received by him with the knowledge that they had been stolen. Although defendant denied having ever possessed the check evidenced by the photocopy at the sentenc ing hearing, the district court found Inspector Ezell's testimony to the contrary more credible. Because defendant's admissions and Inspector Ezell's testimony reasonably established the existence of the incidents not charged in the indictment, the district court properly considered all of the information as "relevant conduct" and applied the enhancements set forth in Sec. 2B1.1 of the guidelines.
 
 AFFIRMED
 
 
 *
 Appendix, Pages 42-69, Sentencing Hearing, February 24, 1994