

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-1-1996

# United States v. Copple

Precedential or Non-Precedential:

Docket 95-3119

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"United States v. Copple" (1996). *1996 Decisions*. Paper 226.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/226

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 95-3119

_____

UNITED STATES OF AMERICA

v.

JOHN R. COPPLE, an individual;
MECHEM FINANCIAL INCORPORATED,
a corporation

JOHN R. COPPLE,
                              Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 91-cr-00026E)

_____

Argued September 11, 1995

Before:  SLOVITER, Chief Judge, and ALITO,
Circuit Judge, and RENDELL, District Judge*

(Opinion filed February 1, 1996)
_____

Leonard G. Ambrose, III  (Argued)
Ambrose, Friedman & Weichler
Erie, PA  16502-1495

            Attorney for Appellant

Bonnie R. Schlueter  (Argued)
Office of United States Attorney
Pittsburgh, PA  l5219

            Attorney for Appellee
_____

OPINION OF THE COURT
_____

* Hon. Marjorie O. Rendell, United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

1

SLOVITER, Chief Judge.

This case is before us on the appeal of defendant John R. Copple from that portion of the district court's judgment of sentence ordering restitution in the amount of $4,257,940.45. In an earlier appeal in the same case, we vacated the judgment of sentence and remanded for resentencing. We directed the district court, inter alia, to make findings about Copple's ability to pay restitution. Following a hearing, the court reimposed the same amount of restitution. We conclude that Copple's argument that the restitution order is unreasonable and clearly excessive in light of the record developed at the resentencing hearing is well-taken.

## I.

The facts are fully set forth in our prior opinion, United States v. Copple, 24 F.3d 535 (3d Cir.) (Copple I), cert. denied, 115 S. Ct. 488 (1994), and we therefore repeat only so far as is necessary in the context of this appeal. Copple, who was convicted on multiple counts of mail fraud and income tax evasion, had defrauded funeral directors of funds which he had promised to channel into low-risk/high-return investments. Copple and his investment firm obtained $12 million from the pre-paid funeral plans of a large number of funeral directors, but instead of investing the money as promised Copple used it to increase his personal assets and live extravagantly. Copple's firm filed for bankruptcy.

The bankruptcy trustee, who discovered Copple's misappropriation, was able to recoup only a limited amount of these assets, primarily several accounts and deposits totalling $389,356.51 and coins from Copple's rare coin collection that were later auctioned off for $209,045.  The loss to the victims of Copple's swindle was $4,257,940.45.  See Copple I, 24 F.3d at 538-40.

A jury convicted Copple on 34 counts of mail fraud and 3 counts of income tax evasion.  Copple was sentenced to 71 months imprisonment, a $100,000 fine, a special assessment of $1850 and three years supervised release.  The district court accepted the findings in the presentence report concerning money due victims, and ordered Copple to pay restitution of $4,257,940.45.

Copple appealed, challenging both his conviction and sentence.  This court affirmed the conviction, but vacated the sentence because the district court impermissibly based an upward departure on the large number of victims and the amount of monetary loss involved.

More relevant for our purposes here is our discussion of the restitution portion of the district court's judgment.  We emphasized our cases instructing that restitution orders be grounded on specific factual findings regarding the defendant's economic circumstances and other relevant financial information. We noted that the district court had failed to make any such findings to support its restitution order of $4,257,940.45, and "therefore remand[ed] for the district court to make the factual

3

findings necessary to support such order of restitution as it may make." Id. at 549-50.

On remand, the district court conducted a resentencing hearing. Mary Copple, Copple's wife and the caretaker for their two minor children – Jennifer, 18 years old and John, 16 years old, testified that she could not work or even complete basic daily tasks because of chronic mental illness, that she required and had been receiving psychiatric treatment for three years, and that her husband and her daughter also suffered from mental illness and were under physicians' care. App. at 53-66. She stated that her only steady income was $403 in monthly welfare payments and $292 in monthly food stamps, and that the occasional commission checks she had received from her husband's insurance policy renewals totalled $300. She testified that her home was subject to foreclosure after her failure to pay mortgage payments for 15 months, that any remaining equity was subject to levy by the bankruptcy trustee, that the home's electricity and gas utilities had been discontinued for her inability to pay bills, and that her only other assets were $400 in a bank account, some furniture, and a 1987 Cadillac. Id. at 58-70.

Jennifer Copple, Copple's eighteen-year old daughter, testified that she suffered from manic depression, was on medication and had been undergoing regular therapy, and as a result could attend school only part-time. Id. at 73-75. The government presented no evidence at the hearing. The court resentenced Copple to a shorter term of 63 months imprisonment, vacated the $100,000 fine it had imposed earlier, and reimposed

the $1,850 special assessment and three-year period of supervised release.

In addition, the court again ordered that Copple pay restitution of $4,257,940.45.  After establishing that "[t]he identification of the various victims and the amounts of individual losses are consistent with the testimony of the various funeral directors at trial and were not challenged by the Defendant," App. at 103, the district court renewed its order of full restitution on the following basis:

> With respect to the Defendant's ability to pay, obviously, according to the testimony of his wife, the family is in dire financial straits at this time.  But Mr. Copple is a college graduate.  He certainly has been successful, albeit in an unlawful way in many instances, but he's certainly been a successful businessman as far as gaining the ends which he hoped to gain in the business world.  So I think certainly the potential is there for him to succeed with respect to his finances in the future.

App. at 104.

Copple challenges only the restitution order on this appeal.  The district court had jurisdiction under 18 U.S.C. §3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We conduct plenary review to determine whether a restitution order is permitted under law, but review the specific order only for abuse of discretion.  United States v. Graham, No. 94-1370, 1995 WL 744974, at *2 (3d Cir. Dec. 18, 1995).

5

The requirements according to which a district court may permissibly fashion and validly impose a restitution order are contained in the two provisions of the Victim and Witness Protection Act of 1982 (VWPA), since recodified at 18 U.S.C. §§3663 and 3664 and incorporated into United States Sentencing Guideline § 5E1.1 and its accompanying commentary. 18 U.S.C. §3663 authorizes a sentencing court to order that a defendant make restitution to any victims of the offense of conviction. 18 U.S.C. § 3663(a)(1) (1994). Before the court does so, it must consider the following specific factors: "the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. §3664(a) (1994).

In order to facilitate meaningful appellate review, this court has exercised its supervisory power to require the district courts "to make specific findings as to the factual issues that are relevant to the application of the restitution provisions of the VWPA." United States v. Palma, 760 F.2d 475, 480 (3d Cir. 1985). In Copple I, we referred to our earlier opinion in United States v. Logar, 975 F.2d 958, 961 (3d Cir. 1992), where we identified the following factual matters to be considered by the sentencing court before ordering restitution:
> 1) the amount of loss, 2) the defendant's ability to pay and the financial need of the defendant and the defendant's dependents, and 3) the relationship between

> the restitution imposed and the loss caused by the defendant's conduct.

See Copple I, 24 F.3d at 549. We also stated that the court

> must point to the evidence . . . supporting the calculation of loss to the victims.

Id. at 549-50. Copple argues that the district court failed to follow those explicit directions on remand.

Before it reinstated its restitution order, the district court noted that the government's "identification of the various victims and the amounts of individual losses" were undisputed and had been corroborated by testimony at trial. App. at 103. Thus, the court satisfied our instruction to make an explicit finding regarding the amount of the victims' loss, and Copple does not argue otherwise.

Instead, this appeal centers on the court's conclusion that Copple would be able to pay the amount of restitution it set. The court based that conclusion on the "findings" that "Copple is a college graduate" and that "[h]e certainly has been successful, albeit in an unlawful way in many instances, . . . in the business world." App. at 104. It made no findings concerning Copple's financial resources. Nor did it make findings about Copple's financial needs, and observed only that "the family is in dire financial straits at this time," an assertion hardly supportive of the exceptionally large restitution amount it ultimately ordered.

The government makes essentially two arguments in its effort to sustain the district court's restitution order. First

7

it argues that the order can be upheld on the bases given by the district court, and that the district court properly considered Copple's college education, skills and intelligence in determining his future ability to pay. We agree that if there is a reasonable basis for a projection of the defendant's future earning ability, a restitution order can be grounded on these factors. In this case, however, notwithstanding our prior remand to give the district court the opportunity to furnish the specific findings that we have held must accompany the restitution order, no such findings were made. After noting Copple's college degree and business acumen, the district court imposed its restitution order based merely on the following conclusion: "So I think certainly the potential is there for [Copple] to succeed with respect to his finances in the future." App. at 104.

Despite the government's valiant efforts to defend this conclusion, it is most telling that it concedes that "[a]dmittedly, [the district judge] did not explain how he arrived at the conclusion that Copple, by virtue of a college education and business acumen, could earn, by legitimate means, enough to support his family, to pay his back taxes and current taxes and to clear $4,257,940.45 for restitution." Brief of Appellee at 19. The government suggests that based on the evidence presented at sentencing, "one might well conjecture that Copple could be expected to clear, at most, $250,000 to be used toward restitution ($50,000 per year over a five year period)." Brief of Appellee at 20 (emphasis added). There is nothing in

8

the record to support the government's suggestion that a man with an ill wife and two children, who apparently also have emotional problems, could _clear_ $50,000 a year.  Persons in far more favorable circumstances would have difficulty doing so. Moreover, as the government recognizes, the restitution order in this case was not $250,000 but more than sixteen times that amount.  We cannot sustain any restitution order, much less one in excess of $4 million, on conjecture.

The second argument the government makes to support the restitution order is based on its contention that Copple has not yet accounted for all the assets he acquired with the misappropriated funds, which the government claims include $427,000 from Copple's pre-bankruptcy sale of some of his rare coins and $196,334 in furniture.  It argues that the district court's liberal restitution order can be viewed as an "implicit" attempt to capture unidentified holdings that Copple has failed to produce voluntarily.

It is not improbable that the district court's restitution order may have been motivated by a reasonable apprehension that Copple has secreted certain assets, even though the court did not say so.  It does not follow, however, that factual findings supporting such an apprehension must be as covert as the hidden assets themselves.

The government contends that the district court could reasonably have accorded little credibility to Copple's showings regarding his lack of ability to pay in light of Copple's suspected retention of certain assets and his generally

9

uncooperative attitude in accounting for and turning over other assets to the bankruptcy trustee. However, the district court made no explicit finding of lack of credibility. Even if the district court's order were premised on its disbelief of Copple's assertions, we cannot affirm a restitution order where the amount fixed is based merely on the court's lack of confidence in the defendant.

We do not suggest that a defendant who has become expert at secreting the proceeds of the crime can avoid the obligation to disgorge them. The proceeds from a defendant's illegal conduct that the defendant still retains or can recoup are certainly encompassed within the "financial resources of the defendant," 18 U.S.C. § 3664(a), that the district court should consider in fashioning a restitution order. Of course, the continued existence of such proceeds is a factual issue that should be accompanied by "specific findings."

Although we have not seen it applied elsewhere, we believe there is a method by which the court can fashion a restitution order that accounts for the court's reasonable belief that there are secreted assets and that satisfies the court's obligation to make the necessary supporting findings. Under 18 U.S.C. § 3664(d), the sentencing court has broad discretion to assign to either party "[t]he burden of demonstrating such other

10

matters as the court deems appropriate" in the course of its fact-finding.  It would be sufficient for a district court that believes, based on the record, that such proceeds are still available to determine the amount properly attributable to the defendant with reasonable precision.

For example, in this case the court may adopt as a starting figure the total amount of value (cash, asset values, etc.) that (1) Copple was found originally to have appropriated and (2) for which he has not yet accounted.  The court should then permit Copple to prove that he is, in fact, not in possession of any part of that total amount by specific evidence showing the amount of disbursements and their destination. Unless Copple can disprove possession of any remaining amount in this manner, the court may consider the resulting figure as constituting "financial resources of the defendant."  The court may then make its determination of Copple's capacity to pay the ordered amount within five years, taking into account the resources arrived at by the above method along with other relevant factors, such as the financial needs and earning ability of Copple and his dependents.  See 18 U.S.C. §§ 3664(a) & § 3663(f).

We believe this approach is preferable to the speculative exercise that the government would have us perform. For one thing, it enhances the basis for appellate review.  More important, it places the responsibility for accounting for funds misappropriated squarely on the individual who misappropriated them.  Assigning to Copple the burden of proving disgorgement of

11

the total amount appropriated is consistent with (1) the statutory mandate, see 18 U.S.C. § 3664(d) ("The burden of demonstrating the financial resources of the defendant . . . shall be on the defendant."), (2) the legislative history of the VWPA, see S. Rep. No. 532, 97th Cong., 2d Sess. 31, reprinted in 1982 U.S.C.C.A.N. 2515, 2537 (quoted in U.S.S.G. § 5E1.1, comment. (backg'd.)) ("In those unusual cases where the precise amount owed is difficult to determine, the section authorizes the court to reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim."), and (3) our policy-based conviction that defendants ought not be permitted to profit, quite literally, from uncertainty for which their illegal conduct is ultimately responsible.

Because we cannot sustain the restitution order on the basis of the findings that the district court made, we must once again, albeit reluctantly, remand this case. In doing so, we recapitulate some relevant principles: First, "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." 18 U.S.C. §3664(d). Second, although indigency at the time of sentencing is not a bar to ordering restitution, see United States v. Hallman, 23 F.3d 821, 827 (3d Cir.) (citing Logar, 975 F.2d at 962), cert. denied, 115 S. Ct. 216 (1994), the sentencing court should ground the amount of restitution ordered on realistic prospects that the defendant will be able to pay it, and not on fantastic or overly speculative possibilities. See Hallman, 23

12

F.3d at 827 (restitution order "may not be based on some future fortuitous event that may befall the appellant, but must be based on realistic expectations"); United States v. Seale, 20 F.3d 1279, 1286 (3d Cir. 1994) (in determining future earning capacity, "some degree of certainty is required"); Logar, 975 F.2d 958, 964 (limiting the district court to consideration of "realistic" possible additional sources of income); United States v. Mahoney, 859 F.2d 47, 52 (7th Cir. 1988) (describing impossible restitution orders as "shams" and as "defeating any hope of restitution and impeding the rehabilitation process"). Third, the restitution obligation is intended for repayment within five years. See 18 U.S.C. § 3663(f); United States v. Sleight, 808 F.2d 1012, 1021 (3d Cir. 1987).

The relevant determination in favor of an order of restitution, therefore, is not a court's vague appreciation of a defendant's "potential to succeed" financially at some point in the undefined future, but, rather, its finding by a preponderance of the evidence that there exists a realistic prospect that defendant will be able to pay the required amount within five years.

Although we stop short of ruling on the substantive appropriateness of the particular restitution amount ordered by the district court, we cannot avoid noting that the extraordinarily ambitious amount ordered, in excess of four million dollars, appears, at the very least, somewhat counterintuitive in light of the court's contemporaneous decision to vacate the $100,000 fine it originally imposed "in view of

13

[Copple's] financial situation." App. at 104. The absence of explicit findings on the crucial factual issues prevents us from evaluating confidently the incongruity thereby presented. See Graham, 1995 WL 744974, at *7 n.2 (while "anomalous that the district court concluded that [defendant] would be able to pay approximately $46,000.00 in restitution if he is unable to pay any fine, . . . the lack of record findings makes these claims difficult to review").

Of course, the district court may well have considered the distinct standards governing an order of restitution and the imposition of a fine. Compare U.S.S.G. § 5E1.1, comment. (backg'd.) (instructing only that court ordering restitution "consider" factors indicative of defendant's ability to pay) with U.S.S.G. § 5E1.2(a) (instructing court not to impose fine where "the defendant establishes that he is unable to pay and is not likely to become able to pay"). It may also have considered the difference in the time-frames for payment. Compare U.S.S.G. §5E1.1, comment. (backg'd.) (imposing a maximum five-year time limit on payment of restitution) with U.S.S.G. § 5E1.2(g) (time before fine paid "generally should not exceed twelve months"). See generally United States v. Ahmad, 2 F.3d 245, 247-49 (7th Cir. 1993) (attempting reconciliation of district court's decisions to order restitution and withhold imposition of fine with possible justifications).

Even if the government is correct that Copple has retained $623,334 in assets, under the court's order Copple must come up with over $3.6 million in five years to satisfy the

14

restitution order, plus an additional $665,859 to pay off back taxes.  Copple is currently incarcerated, has a wife and two children to support after he completes his term, and faces his employment prospects with fraud and tax evasion convictions in tow.  The value of a college degree notwithstanding, we cannot say--in the absence of the factual findings discussed--that on substantive review we could conclude the court's order to be factually supportable.

## III.

In light of the foregoing, we will vacate the district court's restitution order and remand for the required factual findings supporting such order of restitution as it may make.

ALITO, <u>Circuit Judge</u>, concurring:

I join the opinion of the court.  While restitution for victims is very important, no good is done by restitution orders that vastly exceed a defendant's ability to pay and that therefore will never be satisfied.

The defendant in this case caused great suffering for the victims of his crimes, while he and his family used the stolen funds to live lavishly.  As we observed in our earlier opinion, the defendant's personal expenditures during a three-year period totalled $2.5 million, including more than $500,000 for jewelry and nearly that much for gifts to his family.  24 F.3d at 539.

Defendants convicted of fraud offenses are sometimes masters at hiding assets.  Therefore, if the government bore the burden of proving that such defendants still possess illegally obtained assets, the government would be unable to locate hidden assets, those assets would not be taken into account in framing the restitution orders, and the defendants would continue to profit at the expense of the innocent victims.  This would be unconscionable.

The solution is to place the burden of proof on the defendant to show what has happened to <u>all</u> of the illegally obtained assets.  <u>See</u> 18 U.S.C. § 3664(d).  All the assets for

which the defendant cannot account may be included in the amount of restitution ordered.  To the extent that records are unavailable, the risk of inaccuracy should be borne by the defendant rather than the victims.