

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-23-1995

# USA v Marrone & Paris

Precedential or Non-Precedential:

Docket 93-5738

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"USA v Marrone & Paris" (1995). *1995 Decisions.* Paper 60.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/60

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 93-5738


UNITED STATES OF AMERICA

v.

JOHN MARRONE,
a/k/a JOHNNY MOOSE

JOHN MARRONE,
                    Appellant


No. 93-5740


UNITED STATES OF AMERICA

v.

MICHAEL PARIS,
                    Appellant


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Nos. 92-cr-00171-6, 92-cr-00171-9)


Argued:  January 24, 1995

Before:  SLOVITER, Chief Judge,
LEWIS and WEIS, Circuit Judges

(Filed February 23, 1995)

John C. Whipple  (Argued)
Whipple, Ross & Hirsch
Parsippany, N.J.  07054

      Attorney for Appellant John Marrone

Richard F. X. Regan  (Argued)
Hayden, Perle & Silber
Weehawken, N.J. 07087

      Attorney for Appellant Michael Paris

Faith S. Hochberg
United States Attorney
Leslie F. Schwartz  (Argued)
Victor Ashrafi
Newark, N.J.  07102

      Attorneys for Appellee


OPINION OF THE COURT


SLOVITER, <u>Chief Judge</u>.


      John Marrone and Michael Paris appeal from sentences imposed following their convictions on RICO and gambling offenses.  They were indicted, tried, and convicted with six other defendants, all of whom were associated with the Genovese Crime Family (GCF).  Though all defendants appealed, this opinion addresses only certain sentencing issues raised by Marrone and Paris.[1]  Specifically, Paris argues that a RICO predicate act for

---

[1].  Finding no merit in any of the contentions raised by the other defendants, we have today affirmed the convictions and sentences of all the other defendants.

which he was previously convicted should not have been used as the basis for added criminal history points.  In Marrone's case, the predicate act was not used for criminal history points, but to determine his status as a career offender.  He contends this was improper.  We will discuss their contentions separately but in one opinion because the legal issues overlap.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.  To the extent that defendants challenge the district court's legal interpretation of the Sentencing Guidelines, we exercise plenary review.  United States v. Bierley, 922 F.2d 1061, 1064 (3d Cir. 1990).

## I.

## PARIS – CRIMINAL HISTORY POINTS

The indictment charged that Paris was an "associate" of the GCF, subordinate to defendant Salvatore Lombardi, a "caporegime" in the GCF.  After a jury trial, Paris was convicted on several counts, including conspiracy to conduct and participate in the conduct of the GCF's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d) (Count 1); conducting and participating in the conduct of the GCF's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c) (Count 2); and various gambling offenses not at issue in this appeal.

Paris had been previously convicted for a predicate act charged in Count 2.  Specifically, the indictment charged Paris with an attempted bribery to which he pled guilty in New York state court on February 26, 1992 and for which he was sentenced

to one to three years imprisonment.  In convicting Paris on Count 2, the jury found this predicate act proven by special interrogatory.

The district court did not factor the attempted bribery into Paris' base offense level.  Instead, the court assessed three criminal history points against Paris under U.S.S.G. § 4A1.1(a), which placed him in criminal history category II.  The court then sentenced Paris to 57 months imprisonment running consecutively to his state bribery sentence, followed by three years supervised release, plus a fine of $7500 and a special assessment of $250.

In sentencing a RICO defendant, the district court must apply "the offense level applicable to the underlying racketeering activity" or an offense level of 19, whichever is greater.  U.S.S.G. § 2E1.1.  The district court found that Paris' underlying conduct, apart from the attempted bribery, resulted in an offense level of 17, and therefore assigned him a base offense level of 19.  The court also assessed a three level increase for Paris' managerial and supervisory role, giving him a total offense level of 22.

In arriving at a defendant's criminal history, a district court must add three criminal history points "for each prior sentence of imprisonment" exceeding 13 months.  U.S.S.G. § 4A1.1(a).  The Guidelines define "prior sentence" as "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense."  Id. § 4A1.2(a)(1) (emphasis added).  The commentary to section 4A1.2 explains that

a prior sentence is one "imposed prior to sentencing on the instant offense . . . . A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense." Id. § 4A1.2, comment. (n.1).

Paris argues that because the bribery was included as a predicate act, it was part of the "instant offense" and therefore should not have been the basis of criminal history points.[2] The district court was not persuaded that the bribery conduct should be encompassed for sentencing purposes into the "instant offense" and instead treated it as a prior sentence. It relied on commentary to section 2E1.1 (Racketeering) which discusses when conduct is to be assigned to criminal history rather than to the "instant offense." Under that commentary, conduct charged as part of the "pattern of racketeering activity" that was the subject of an earlier conviction and sentence should be treated as a "prior sentence" under section 4A1.2(a)(1) (referring to instructions for Computing Criminal History) and not as part of the "instant offense" if the defendant was convicted for that conduct before the "last overt act of the instant offense." See U.S.S.G. § 2E1.1, comment. (n.4) (hereafter Application Note 4).[3]

---

[2]. Paris raises but does not fully develop this argument in his brief. However, he joins in the arguments of his co-appellant Marrone, who does develop the issue in the context of challenging his classification as a career offender.

[3]. The full text of Application Note 4 provides:

We are bound by "commentary in the Guidelines Manual that interprets or explains a guideline . . . unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 113 S. Ct. 1913, 1915 (1993). We must therefore determine whether Application Note 4, under which certain sentences imposed for conduct underlying a RICO conviction are treated as "prior sentences" for criminal history purposes, is inconsistent with section 4A1.2(a)(1).

In a series of cases, albeit in another context, we have noted that Congress did not intend "RICO to be a substitute for the predicate offense," but instead "intended to create separate offenses for the predicate acts and the substantive RICO charge." United States v. Esposito, 912 F.2d 60, 63–64 (3d Cir. 1990), cert. dismissed, 498 U.S. 1075 (1991); see also United States v. Grayson, 795 F.2d 278, 283 (3d Cir. 1986) ("Congress, in enacting RICO, sought to allow the separate prosecution and

(..continued)
> Certain conduct may be charged in the count of conviction as part of a "pattern of racketeering activity" even though the defendant has previously been sentenced for that conduct. Where such previously imposed sentence resulted from a conviction prior to the last overt act of the instant offense, treat as a prior sentence under § 4A1.2(a)(1) and not as part of the instant offense. This treatment is designed to produce a result consistent with the distinction between the instant offense and criminal history found throughout the guidelines. If this treatment produces an anomalous result in a particular case, a guideline departure may be warranted.

U.S.S.G. § 2E1.1, comment. (n.4).

punishment of predicate offenses and a subsequent RICO offense."), cert. denied, 479 U.S. 1054, 481 U.S. 1018 (1987); United States v. Riccobene, 709 F.2d 214, 232 (3d Cir.) ("The predicate offenses . . . are not themselves the RICO violation[;] they are merely one element of the crime. [RICO] does not prohibit the commission of the individual racketeering acts. Rather, it bans the operation of an on-going enterprise by means of those acts."), cert. denied, 464 U.S. 849 (1983).

Similarly, for criminal history purposes, the Sentencing Commission has clarified that a RICO violation should be considered separate from any previously convicted predicate act. See U.S.S.G. App.C, amend. 142 (Application Note 4 added "to clarify the treatment of certain conduct for which the defendant previously has been sentenced as either part of the instant offense or prior criminal record"). Although a predicate act constitutes an element of a RICO violation, the previously convicted RICO offender is in effect a repeat offender who breaks the law once by committing a predicate act and again by engaging in a pattern of racketeering activity. The Sentencing Commission has declared that a repeat offender "is more culpable than a first offender and thus deserving of greater punishment," and that "[r]epeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation." U.S.S.G. Ch.4, Part A, intro. comment.

The Commission accordingly provided that where a defendant has previously been convicted for a RICO predicate act, that conviction should be factored into the defendant's criminal

history score rather than the base offense level. Cf. U.S.S.G. § 2D1.5, comment. (n.3) (if a conviction for engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 is supported by conduct for which the defendant has previously been sentenced, "[a] sentence resulting from a conviction sustained prior to the last overt act of the instant offense is to be considered a prior sentence under § 4A1.2(a)(1) and not part of the instant offense").

Apparently no appellate court has addressed this issue in an opinion in the RICO context. However, in United States v. Crosby, 913 F.2d 313, 315 (6th Cir. 1990), the court sustained the Commission's approach in the context of the guideline on continuing criminal enterprise, saying: "If a conviction occurs while the criminal enterprise is continuing, a court should include the sentence resulting from that conviction in the criminal history for calculating the sentence for involvement in a continuing criminal enterprise. . . . The sentencing guidelines reflect the unique nature of a continuing criminal enterprise by including prior sentences in the defendant's criminal history, even if the prior sentences are for crimes committed in furtherance of the continuing criminal enterprise." Cf. United States v. Minicone, 960 F.2d 1099, 1111 (2d Cir.) (government unsuccessful in arguing that district court erred in assessing prior conviction of RICO defendant only in calculating criminal history and not in calculating base offense level; "district court reasonably construed Note 4 to mean that the conduct underlying the previously imposed sentence should not be used in

calculating the base level for the instant [RICO] offense"), cert. denied, 112 S. Ct. 1511, 113 S. Ct. 199 (1992).

The Commission's treatment of the prior conviction for a RICO predicate act, reflected in its commentary in Application Note 4, avoids the anomaly of treating a RICO defendant with a previous conviction for conduct that is part of a continuing pattern of racketeering activity as a first offender with a criminal history category of I.[4] Admittedly, the Sentencing Commission could have amended the guidelines to achieve the same result. It was, however, equally free to amend the commentary "if the guideline which the commentary interprets will bear the construction." Stinson, 113 S. Ct. at 1919.

Application Note 4 constitutes an interpretation of the RICO guideline that "may not be compelled by the guideline text" but is nonetheless "not plainly erroneous or inconsistent" with section 4A1.2(a)(1). Stinson, 113 S. Ct. at 1920 (quotation and citation omitted). We are therefore bound to accept Application Note 4 as written.[5]

---

[4]. To be sure, absent Application Note 4 the previously convicted conduct would be factored into the RICO defendant's base offense level. However, here as in most cases, the increase in criminal history score resulting from Application Note 4 produces a higher guideline range than would the incorporation of the previously sentenced conduct into the base offense level.

[5]. Effective November 1, 1993, the Sentencing Commission amended the commentary to section 4A1.2 to state, "Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)." U.S.S.G. § 4A1.2, comment. (n.1) (Nov. 1993). Marrone argues that this brings section 4A1.2 into conflict with Application Note 4. We do not so read it. Instead, Application Note 4 represents the Commission's permissible construction of a

Neither United States v. Hallman, 23 F.3d 821 (3d Cir.) cert. denied, 115 S. Ct. 216 (1994), nor United States v. Kenyon, 7 F.3d 783 (8th Cir. 1993), compel a contrary result.  In Hallman, we held that a state conviction for forgery could not count as a prior sentence under section 4A1.2(a)(1) because it was "part of a common scheme and plan" including the instant offense of possession of stolen mail, where all of the stolen mail was in the form of checks or credit cards and the forged check underlying the state conviction was from a sequence of checks found within the stolen mail.  See Hallman, 23 F.3d at 826.  Because Hallman was not a RICO defendant who participated in a pattern of racketeering activity apart from any single predicate act, reducing his criminal history score neither implicated Application Note 4 nor contravened the policy of the criminal history guideline.

In Kenyon, on which Paris and Marrone both rely, the defendant pled guilty in state court to possession of cocaine and in federal court to conspiracy to possess cocaine with intent to distribute.  The court held that it was error to count the state conviction toward Kenyon's criminal history score because the conduct underlying the state conviction "comprise[d] part of the conduct" and was "part of the same criminal scheme" for which he was convicted in federal court.  Kenyon, 7 F.3d at 787.  Like

(..continued)
defendant's criminal history in the unique context of a RICO offense.

Hallman, however, Kenyon was not charged with participating in a pattern of racketeering activity as defined in RICO.

Paris argues in the alternative that Application Note 4 does not apply by its own terms because his bribery sentence did not result "from a conviction prior to the last overt act of the instant offense." U.S.S.G. § 2E1.1, comment. (n.4). He notes that he pled guilty to the bribery in state court on February 26, 1992, which was after the date of the last overt act charged in the indictment (February 17, 1992). See App. at 182-83. However, Application Note 4 refers to the last overt act of the offense, not the last act charged in the indictment, and the district court found that the last overt act of the offense, Marrone's purchase of a silencer from an undercover officer, occurred on March 18, 1992, after Paris' guilty plea. His bribery conviction thus properly falls under Application Note 4,[6] and the district court did not err in treating it as part of criminal history.[7]

---

[6]. In the district court and at oral argument in this court, Paris argued that Marrone's purchase of a silencer was not chargeable to him because it was not reasonably foreseeable. He did not make this argument in his brief and therefore may have waived it. In any event, Application Note 4 does not refer to the last act chargeable to the defendant, and Paris has cited no authority to support such a requirement.

[7]. We find no merit in Paris' other arguments that (1) the judgments of conviction as to Count 1 must be vacated and reversed because the government failed to adduce sufficient evidence connecting him to the RICO conspiracy and to the RICO enterprise; (2) the district court erred in assessing him a three-level upward adjustment for "aggravating role" under U.S.S.G. § 3B1.1(b); (3) the district court erred in refusing to allow a two-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1; and (4) the district court

## II.

<u>MARRONE—CAREER OFFENDER STATUS</u>

Marrone also argues that the district court erred in its treatment of his prior sentence, in his case for arson, which he contends was part of the "instant offense." Unlike Paris, whose prior sentence was used as the basis to add criminal history points, the arson sentence was used in Marrone's case to classify him as a career offender.

The indictment charged that Marrone was a "made member" of the GCF, subordinate to Salvatore Lombardi. After the jury trial, Marrone was convicted on several counts, including conspiracy to conduct and participate in the conduct of the GCF's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d) (Count 1); conducting and participating in the conduct of the GCF's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c) (Count 2); and various gambling offenses not at issue in this appeal.

One of the predicate acts charged in Count 2 against Marrone was a 1982 arson for which he was sentenced in a New Jersey state court in 1985[8]. In convicting Marrone on Count 2, the jury found this predicate act proven by special interrogatory.

(..continued)
erred in declining to reduce his guideline sentence for time spent in jail prior to the commencement of his sentence under U.S.S.G. § 5G1.3(b) or by way of a downward departure pursuant to U.S.S.G. § 2E1.1, comment. (n.4), and U.S.S.G. § 5K2.0, p.s.

[8]. The presentence report does not state when Marrone was convicted for the arson, though it occurred after the commencement of the conduct charged as RICO in the indictment.

As in the case of Paris, the district court did not factor the arson into Marrone's base offense level. Instead, the court relied on his arson conviction, as well as an unrelated earlier conviction for using extortionate means to collect an extension of credit in violation of 18 U.S.C. § 894, to classify him as a career offender under U.S.S.G. § 4B1.1 (Nov. 1992). The district court then sentenced Marrone to a total of 293 months imprisonment, followed by three years supervised release, and a special assessment of $350.

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense; (2) the instant offense is a felony that is a crime of violence or a controlled substance offense; and (3) the defendant has "at least two prior felony convictions" of a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1.[9] To have two prior felony convictions, the defendant must have "committed the instant offense subsequent to sustaining" the two convictions, and the sentences for the two convictions must be "counted separately under the provisions of § 4A1.1(a), (b), or (c)." Id. § 4B1.2(3).

_____

[9]. A career offender's offense level is the greater of the offense level applicable to the underlying conduct or the appropriate offense level specified in section 4B1.1. A career offender automatically receives a criminal history category of VI. U.S.S.G. § 4B1.1. Here, the district court assigned Marrone a total offense level of 33, two levels lower than that calculated in the presentence report but still greater than the relevant level under § 4B1.1.

Marrone argues first that his designation as a career offender was improper because the 1982 arson cannot be used as a "prior conviction" under section 4B1.1, which he notes is to be governed by section 4A1.2(a)(1).  In effect, he would have us disregard Application Note 4 to section 2E1.1, the racketeering guideline.  In our discussion of Paris' sentencing we have already rejected the argument made by Marrone that Application Note 4 is inconsistent with section 4A1.2(a)(1).  We have concluded instead that Application Note 4 is a permissible interpretation of the guidelines applicable in the specific context of RICO.  Therefore, we agree with the government that a prior conviction for a predicate act can increase a RICO defendant's criminal history score.

Marrone's argument seems to be predicated on the assumption that the "two prior felony convictions" referred to in U.S.S.G. § 4B1.1 which are necessary before the defendant is designated as a career offender must be separate from the "instant offense."  That assumption is mistaken.  Although section 4B1.2 defines "two prior felony convictions" under the career offender guideline to mean that the sentences of at least two such convictions are "counted separately," it does not mandate that these convictions must have resulted from "conduct not part of the instant offense."  Instead, "the sentences that must be separate in this sense are the sentences imposed for the prior convictions . . . .  The two prior convictions must be separate from each other," not necessarily from the instant offense.  United States v. Belton, 890 F.2d 9, 10-11 (7th Cir.

1989) (permitting state conviction that "punished conduct . . . part of [the instant] offense" to serve as predicate felony for career offender guideline).  Here, Marrone's two prior convictions were separate from each other and he does not contend otherwise.

Moreover, as the Belton court recognized, classifying a defendant as a career offender because of conduct related to the offense of conviction is consistent with the policy of the career offender guideline.  See Belton, 890 F.2d at 10 ("Continuing to participate in a drug conspiracy after having been convicted of a drug offense manifests a propensity for recidivism as plainly as if the conspiracy had been started from scratch.").  A career offender is "incorrigible, undeterrable, recidivating, [and] unresponsive to the 'specific deterrence' of having been previously convicted," id., an accurate description of Marrone, who continued to participate in racketeering activity despite his convictions for extortion and arson.

Marrone next argues that his designation as a career offender was improper because the "instant offense" was not committed subsequent to his arson conviction as required by section 4B1.2(3) if it is to be used for career offender purposes.  However, his RICO conduct, i.e. the "instant offense," continued well past his arson conviction, and "continued participation in a conspiracy [or RICO offense] after a felony conviction renders that conviction a prior felony conviction" for purposes of career offender sentencing.  United States v. Elwell, 984 F.2d 1289, 1298 (1st Cir.), cert. denied, 113 S. Ct. 2429

(1993).  See also Belton, 890 F.2d at 10 ("[T]he 'subsequent' offense need not be entirely subsequent to preserve the relation between the [career offender] guideline and its animating policy of punishing the recidivist more severely.").

We find no error in the district court's designation of Marrone as a career offender.[10]

### III.

### CONCLUSION

For the foregoing reasons, we will affirm the judgments of conviction and sentences of Michael Paris and John Marrone.

---

[10].  We find no merit in Marrone's additional arguments that (1) the district court should have ordered a detailed bill of particulars due to the lack of specificity of the pleading of the Count 1 racketeering acts, and (2) there was insufficient evidence to support the jury's finding of proven on racketeering act 6(a) of Count 1 and racketeering act 4 of Count 2.