**UNITED STATES of America**

v.

**Reginald BROOKS, Appellant**

No. 01–4524.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 23, 2002.

Filed Sept. 27, 2002.

Before BARRY, AMBRO, and COWEN, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

Appellant Reginald Brooks was charged in the U.S. District Court for the Eastern District of Pennsylvania with one count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a) and (b)(1)(C); one count of carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Brooks filed a number of pretrial motions, only one of which is important to this appeal—a motion to suppress physical evidence. The District Court denied that motion, and Brooks proceeded to trial following which he was convicted of all three counts. He was sentenced to 25

years of imprisonment and six years of supervised release and ordered to pay a $300 special assessment and a $500 fine. Brooks appeals his convictions and sentence. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and will affirm.

Brooks raises five arguments on appeal: 1) the District Court wrongly denied his suppression motion; 2) there is insufficient evidence to support his drug conviction; 3) there is insufficient evidence to support his firearms conviction under § 924(c); 4) there is insufficient evidence to support his firearms conviction under § 922(g)(1); and 5) the District Court improperly sentenced him as a career offender. We will discuss each of Brooks's arguments in turn.

## I.

Brooks first argues that the District Court incorrectly denied his motion to suppress the gun, drugs, and money seized from his person because the seizure and preceding search violated the Fourth Amendment. We review the District Court's factual findings for clear error and exercise plenary review of its legal conclusions. *United States v. Riddick*, 156 F.3d 505, 509 (3d Cir.1998).

It is well established that a police officer may conduct a brief, investigatory stop and pat-down search for weapons if he or she reasonably suspects that "criminal activity may be afoot and that the persons with whom he [or she] is dealing may be armed and presently dangerous." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In determining whether reasonable suspicion exists, the court must examine the totality of the circumstances, giving due regard to the officer's experience and training. *United States v. Cortez*, 449 U.S. 411, 416–17, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *United States v. Rickus*, 737 F.2d 360, 365 (3d Cir.1984). If, upon questioning, the officer's suspicion is not assuaged but ripens into probable cause, the officer may effect a warrantless arrest and conduct a search of the person and immediate area incident to that arrest. *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

Here, the District Court correctly concluded that Philadelphia police officers had reasonable suspicion to stop Brooks and probable cause to arrest him and search his clothing for contraband. According to Sergeant Gossner's testimony at the suppression hearing, he along with four other officers[1] from the Narcotics Enforcement Team were patrolling the 2800 block of South 60th Street, an area known for narcotics sales and shootings, when they observed Brooks accept money from an individual, later identified as Theodore Johnson, and then reach into his coat pocket and hand Johnson several small items. Based on his experience[2] and personal knowledge of Brooks[3], Sergeant

---

1. The other officers were Johnson, McDonald, Riddick, and Blocker.

2. Sergeant Gossner served as an officer in the Philadelphia Police Department for 16½ years before assuming the position of sergeant. As an officer, he executed numerous arrests for narcotics violations on the streets of Philadelphia. As a sergeant, he supervises the 12th District Narcotics Enforcement Team. Before February 21, 2001, the night when Brooks was arrested, Sergeant Gossner had supervised approximately 200 drug surveillances.

3. Sergeant Gossner first met Brooks when he was a "rookie cop" assigned to patrol the area where Brooks lives. Upon assuming the rank of sergeant and returning to the 12th District (the district encompassing Brooks's home), Sergeant Gossner inquired about Brooks's whereabouts and was told that Brooks was in prison but scheduled for release in October 2000. Sometime after Octo-

Gossner believed that the individuals were engaged in a drug sale.

Officer Johnson, the driver of the unmarked police car in which Sergeant Gossner was a passenger, stopped the car. Sergeant Gossner jumped out and called out to Brooks. Brooks began walking towards the officer. When he was approximately one foot away, Sergeant Gossner grabbed Brooks's shoulder and asked what he was doing. Brooks slapped the officer's hand away and began running down 60th Street. The officers pursued him, and Officer Blocker tried to trip him. Brooks did not fall and appeared to reach for his waistband. Officer Blocker saw that Brooks had a gun and yelled to Officer Riddick. Officer Riddick, who also saw a gun in Brooks's hand, stepped out from between two parked cars and shoved Brooks. Brooks fell, hit his head on a retaining wall, and was rendered unconscious. As he fell, money flew from his one hand and the gun from the other. The officers retrieved the money and the gun and then searched Brooks's clothing for contraband. They found 30 bags of crack cocaine.

■ These facts reveal that Sergeant Gossner, based on his extensive drug enforcement experience, his knowledge of Brooks and the area, anonymous tips, prior police reports, and his personal observations, had ample reason to suspect that Brooks was engaged in a narcotics sale. His initial stop of Brooks was, therefore, permissible under the Fourth Amendment. Brooks's subsequent flight and the police officers' observation of a gun and money gave the officers probable cause to arrest Brooks. The search of Brooks's clothing was a lawful search incident to that arrest. In sum, the District Court did not err in denying the suppression motion.

## II.

Brooks next contends that there is insufficient evidence of an intent to distribute to support his drug conviction under 21 U.S.C. §§ 841(a) and (b)(1)(C). Brooks failed to raise this issue before the District Court; therefore, plain error review applies. *United States v. Wolfe*, 245 F.3d 257, 260–61 (3d Cir.2001). Plain error exists, in the context now before us, when the prosecution fails to prove an essential element of a criminal offense. *Id.* at 261. In determining whether the evidence is sufficient, a court should view the facts in a light most favorable to the prosecution to see if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Wolfe*, 245 F.3d at 261. Once plain error has been established, the defendant must show that this error prejudiced the jury's verdict and that the court should exercise its discretion to correct the error. *Wolfe*, 245 F.3d at 261.

■ There was adequate evidence presented at trial from which a jury could find that Brooks had the intent to distribute. When the police officers arrested Brooks, he was carrying a fully loaded, .32 caliber, Smith and Wesson long revolver; $50 in small denominations;[4] and 30 bags of crack cocaine. He did not have any para-

---

ber, Gossner began seeing Brooks in the area of 60th and Reinhart Streets within the 2800 block. Occasionally, the two would talk. Before Brooks's arrest on February 21, 2001, Sergeant Gossner had received anonymous phone calls implicating Brooks in drug sales.

Additionally, some officers had told Sergeant Gossner that Brooks may be selling drugs on the 2800 block.

4. Brooks had ten $1 bills, six $5 bills, and one $10 bill.

phernalia, such as a blunt, for smoking or otherwise using the cocaine. A search of Theodore Johnson produced two bags of marijuana and one packet of powder cocaine. The government's narcotics expert, Detective Chaves, opined that such facts were consistent with drug distribution and not drug possession. Detective Chaves explained that drug sellers typically carry guns for personal protection and small denominations of money. He also stated, and Sergeant Gossner agreed, that 30 bags of drugs equals a "bundle," which is a common unit of purchase for resale and not for personal use. Officer McDonald similarly testified that in her experience drug sellers usually carry their drugs in plastic bags bundled up while drug users generally carry their drugs singly in a hand or pocket. Finally, Detective Chaves observed, and Officer McDonald concurred, that dealers often sell multiple types of drugs and have these drugs stashed in different locations, as opposed to carrying them all on their person. In the detective's opinion, therefore, the exchange of the small items for money that occurred between Brooks and Johnson was a drug sale. The testimony of the police officers and Detective Chaves provided ample evidence from which the jury could conclude that Brooks intended to distribute the crack cocaine in his possession.

### III.

Brooks also maintains that the evidence presented at trial was insufficient to support his conviction under 18 U.S.C. § 924(c) because the government failed to prove that the gun found in his possession, which was inoperable in its current state, could easily be modified or repaired to expel a projectile. For purposes of the

statutory sections pertaining to firearms offenses, a firearm is "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3).

■ The government introduced sufficient expert testimony to support the finding that Brooks's gun could easily and quickly be made to fire. As mentioned above, Brooks was carrying a fully loaded, .32 caliber, Smith and Wesson long revolver when he was arrested. The main spring assembly, however, was broken.[5] As such, the gun was incapable of firing as designed. Officer Kwong from the Firearm Identification Unit testified that the gun could be made to fire by using a rubber mallet to strike the spur (the back portion of the hammer). When using this technique in the laboratory, Officer Kwong had successfully fired the gun. Furthermore, he explained that the gun could be easily repaired by replacing the spring assembly. This part could be ordered at a gun shop, and an experienced person could replace the broken spring in five minutes. All that was required was unscrewing the grip, removing the old spring, and inserting the new spring. Officer Kwong's testimony, therefore, provided a sufficient basis for concluding that the revolver could readily be made to fire.

### IV.

■ In a similar vein, Brooks maintains that the evidence does not support his conviction under 18 U.S.C. § 922(g)(1). First, he again claims that the government failed to prove that the gun could readily be made operable. For the reasons stated above in point III, we reject this claim.

---

**5.** As explained at trial, the spring assembly provides the mechanical energy to operate the hammer. When the hammer is struck, it det-onates the primer, which ignites the gun powder to launch the projectile.

Second, Brooks suggests that the government must prove not only that the gun traveled in interstate commerce but also that he used the weapon in interstate commerce. Brooks concedes that we rejected this precise argument in *United States v. Singletary*, 268 F.3d 196 (3d Cir.2001). We cannot, as a panel of the Court, revisit the issue here. Under *Singletary*, therefore, Brooks's argument fails.

## V.

In addition to attacking his convictions, Brooks attacks his sentence, arguing that the District Court misapplied the career offender provision in U.S.S.G. § 4B1.1.[6] We exercise plenary review of the District Court's interpretation and application of the Sentencing Guidelines and will disturb the court's factual findings only if clearly erroneous. *United States v. Hallman*, 23 F.3d 821, 823 (3d Cir.1994). Section 4B1.1 provides that a defendant is a career offender if—

(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

■ Pursuant to § 4B1.1's command, the District Court correctly sentenced Brooks as a career offender. First, Brooks was forty years old when he was arrested for the present offenses. Second, Brooks was convicted in the District Court of a controlled substance offense, i.e., possession with intent to distribute crack co-

caine. Third, Brooks has seven prior, adult criminal convictions. For two of these convictions, Brooks was sentenced to a term of imprisonment exceeding one year—a conviction for robbery and a conviction for possession with intent to deliver a controlled substance. Both of these convictions qualify under subsection (3). *See* U.S.S.G. § 4B1.2(a) (defining a "crime of violence" as an offense punishable by a term of imprisonment exceeding one year and involving "the use, attempted use, or threatened use of physical force against the person of another"); U.S.S.G. § 4B1.2(b) (defining a "controlled substance offense" as an offense punishable by a term of imprisonment exceeding one year that involves "the possession of a controlled substance . . . with intent to . . . distribute"). Given Brooks's criminal history, the District Court properly determined that § 4B1.1 applied.

## VI.

In conclusion, sufficient evidence supports Brooks's convictions, and the District Court appropriately sentenced him as a career offender. Accordingly, we will affirm the judgment of the District Court.

---

6. Despite his characterization of the issue, Brooks appears to be attacking the District Court's refusal to depart downward based on an overrepresented criminal history. As Brooks acknowledges, we may not review a district court's discretionary refusal to depart downward. *United States v. Denardi*, 892 F.2d 269, 272 (3d Cir.1989).