UNITED STATES of America, Plaintiff–Appellee,

v.

Bernard BRISCO and Ernest Brooks, Defendants–Appellants.

Nos. 03–1427, 03–1469.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 2003.

Decided Dec. 29, 2003.

Robert A. Anderson, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Michael A. Johnson, William H. Ransom, Chicago, IL, John K. Smerlinski, Madison, WI, for Defendant–Appellant.

Before CUDAHY, MANION, and ROVNER, Circuit Judges.

**ORDER**

A grand jury charged Bernard Brisco and Ernest Brooks with conspiring to distribute and to possess with the intent to distribute more than five kilograms of cocaine, more than fifty grams of cocaine base, and an unspecified quantity of marijuana, and also with distributing cocaine and cocaine base on six occasions. Brooks pleaded guilty to the conspiracy charge, and a petit jury convicted Brisco on both the conspiracy charge as well as the six substantive distribution charges. The district court sentenced Brooks to a prison term of 360 months and ordered Brisco to serve a term of life. Both defendants appeal. Brisco challenges the sufficiency of the evidence underlying his convictions, a variety of statements that the prosecutor made in closing argument, and certain limitations that the district judge imposed on communicating with his counsel while witnesses were being examined. At oral argument, Brisco's counsel withdrew a claim of attorney ineffectiveness that Brisco had raised in his brief, and we do not address that claim. Brooks contends that the district court calculated his sentence using an incorrect offense level. Finding no merit in any of the appellants' arguments, we affirm their convictions and sentences.

## I.

### Background

Briefly, the evidence in this case indicated that Brisco headed a conspiracy to distribute cocaine, cocaine base, and marijuana in Madison, Wisconsin from August of 1999 until February 2002. Brisco obtained his cocaine from sources in both Chicago and Los Angeles, and often used female acquaintances as couriers to pick up the cocaine and carry it to Madison; in some instances, these couriers also carried large amounts of cash with them from Madison to pay for the cocaine. When the cocaine arrived in Madison, Brisco would cook a substantial portion of it into crack form and then weigh and package the cocaine for distribution to dealers. Brisco supplied a number of dealers with narcotics, including his co-defendant Brooks, and often Brisco did so on a consignment or "front" basis. Brooks and Brisco were quite close, and Brooks often delivered narcotics to Brisco's other dealers and collected money from them. Brisco used the

homes of several of his female acquaintances to store as well as cook and package cocaine and cocaine base, and in some instances dealers were directed to those homes in order to obtain their supplies; in exchange, he helped these women with their rent and other bills.

## II.

### Brisco's Arguments

A. Sufficiency of the Evidence

■ Brisco has waived any challenge to the sufficiency of the evidence underlying his conspiracy conviction. In order to preserve such a claim, a defendant must make an appropriate motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. *See, e.g., United States v. Pribble,* 127 F.3d 583, 590 (7th Cir.1997); *United States v. Archambault,* 62 F.3d 995, 998 (7th Cir.1995). Although Brisco made such a motion at the close of the government's case, his motion was confined to the six distribution charges. R. 184 at 51–59. In focusing on those charges to the exclusion of the conspiracy charge, it appears that Brisco intentionally relinquished his right to challenge the evidentiary basis for his conspiracy conviction. *See generally United States v. Jacques,* 345 F.3d 960, 962 (7th Cir.2003) (distinguishing waiver from forfeiture),[1] and thus he waived any challenge to the sufficiency of the evidence underlying the conspiracy charge.

■ Our review of the sufficiency of the evidence underlying the distribution counts is limited. Although Brisco sought acquittal on those counts at the close of the government's case (R. 184 at 57), he failed to renew his Rule 29 motion at or after the close of all evidence, thereby forfeiting his sufficiency challenge as to the distribution charges. *United States v. Owens,* 301 F.3d 521, 527–28 (7th Cir.2002); *United States v. Williams,* 298 F.3d 688, 692 (7th Cir.2002). Consequently, our review of the sufficiency of the evidence underlying Brisco's convictions is solely for plain error, "which in this context is present only if his convictions amount to a manifest miscarriage of justice." *Owens,* 301 F.3d at 528. " 'We will reverse only if the record is devoid of evidence pointing to guilt, or if the evidence on a key element of the offense was so tenuous that a conviction would be shocking.' " *Id.,* quoting *United States v. Taylor,* 226 F.3d 593, 597–98 (7th Cir.2000).

Brisco cannot meet this demanding standard. The distribution charges were based on six sales of cocaine or cocaine base that Brooks made to an undercover officer from February to October of 2001. Although it was Brooks who sold the cocaine to the undercover officer on each of these occasions, the jury nonetheless could convict Brisco of aiding and abetting

1. Even assuming, in the alternative, that Brisco forfeited rather than waived his challenge to the conspiracy conviction, *see Jacques,* 345 F.3d at 962, thus entitling him to limited appellate review for plain error, *see, e.g., United States v. Owens,* 301 F.3d 521, 527–28 (7th Cir.2002), Brisco cannot show plain error in his conviction for conspiracy. In view of testimony that Brisco orchestrated the acquisition and transportation of cocaine from Chicago and Los Angeles to Madison (recruiting acquaintances to aid him in those tasks as well as the storage of narcotics that he acquired), that he cooked, packaged, and distributed cocaine and cocaine base to his dealers, that he had more than a passing relationship with these dealers, and that he regularly fronted cocaine and cocaine base to those dealers with the expectation that he would be reimbursed from the proceeds of their sales, the record lends sufficient support to the conspiracy conviction. *See, e.g., United States v. Brack,* 188 F.3d 748, 760 (7th Cir.1999); *United States v. Ferguson,* 35 F.3d 327, 331 (7th Cir.1994).

Brooks' distribution of the cocaine (*see* 18 U.S.C. § 2) if it found that Brisco in some way participated in Brooks' distribution as something that he wished to make happen and that, by his actions, he sought to make succeed. *See United States v. Hatchett,* 245 F.3d 625, 631–32 (7th Cir.2001); *United States v. Lewis,* 117 F.3d 980, 984–85 (7th Cir.1997). Based on the evidence, the jury reasonably could have found that it was Brisco who supplied Brooks with the cocaine and cocaine base that Brooks in turn distributed to the undercover officer The testimony amply demonstrates that Brooks was one of the people to whom Brisco supplied narcotics, and several witnesses named Brisco (and only Brisco) as Brooks' supplier. R. 179 at 41, 84–85, 120–21; R. 183 at 58, 190. Indeed, immediately prior to the last of the charged transactions, Brooks stopped off at the residence of Rebecca Rothwell, a woman whose home Brisco used to store narcotics. R. 178 at 226–27. That circumstance bolsters the inference that Brooks was obtaining his cocaine from Brisco. The jury also could have concluded that Brisco was neither ignorant of nor indifferent to what Brooks did with the narcotics that he supplied. Brisco was not a spot supplier to Brooks and his other distributors. He spearheaded a distribution network whose success depended on the street-level sales of his distributors, and Brooks by all accounts was his right-hand man in that network. The record, in sum, is not devoid of evidence pointing to Brisco's culpability as an aider and abetter in the sales to the undercover officer, and so Brisco's conviction on the distribution counts cannot be described as a miscarriage of justice.

The bulk of Brisco's attack on the distribution convictions, and for that matter the conspiracy conviction as well, is focused on the credibility of the government's witnesses. *See* Brisco Br. at 30–33. These witnesses were, in most instances, participants in the conspiracy themselves. Consequently, Brisco emphasizes, they had reason to incriminate him either in the hope of obtaining leniency for themselves or, in some cases, to exact revenge out of jealousy for Brisco's relationships with multiple women. However, it was for the jury to assess the credibility of these witnesses, and all of their own criminal misdeeds and their motives to help the government and inculpate Brisco were fully aired during the trial. *See, e.g.,* R. 179 at 66, 102, 162–63; R. 183 at 22, 28–29, 33, 113, 122–23, 174–75, 176–77, 240–41, 242–43, 253; R. 178 at 54–55, 59, 82–83, 169–71; R. 184 at 147–48, 151. The jury obviously found the government's witnesses believable, and only extraordinary circumstances that are absent here would permit us to second-guess that assessment. *See United States v. Griffin,* 310 F.3d 1017, 1022 (7th Cir.2002); *United States v. Algee,* 309 F.3d 1011, 1016 (7th Cir.2002), *cert. denied,* 538 U.S. 925, 123 S.Ct. 1595, 155 L.Ed.2d 317 (2003); *United States v. Hayes,* 236 F.3d 891, 896 (7th Cir.2001).

**B. Prosecutor's Statements in Closing Argument**

Brisco contends that the prosecutor made a number of statements during closing argument that were improper. We apply a two-step analysis to this type of claim, considering first whether the remark in question indeed was improper and, if so, whether the remark deprived the defendant of a fair trial in view of the record as a whole. *See, e.g., United States v. Graham,* 315 F.3d 777, 781–82 (7th Cir.), *cert. denied,* —— U.S. ——, 124 S.Ct. 342, 157 L.Ed.2d 235 (2003). In this case, Brisco made no contemporaneous objection to any of the remarks that he now challenges on appeal. Consequently, only if one or more of these remarks rose to the level of

plain error would he be entitled to a new trial. *Id.* at 782. We consider each of the challenged remarks in turn.

■ In discussing the elements of the offense of conspiracy, the government's attorney told the jury that "if you plan to commit [a] crime, you are guilty of conspiracy." R. 184 at 169. Considered by itself, this would not be an accurate definition of conspiracy, which requires an agreement rather than a plan. But the judge properly instructed the jury on that point, R. 184 at 239, and placed in context, we do not view the prosecutor's statement as misleading:

> [A] conspiracy is a crime of an agreement. You can plan to commit a crime, and if you plan to commit that crime, you are guilty of conspiracy. When you take steps to carry out the conspiracy, you carry out the plan, those are called acts in furtherance of the conspiracy. What we have proven to you over the last few days is not only a conspiracy existed, but an agreement existed between these people, all of them. . . .

R. 184 at 169.

■ Also on the subject of conspiracy, the prosecutor remarked that "a conspiracy does not have to mean that there was a formal written contract." R. 184 at 174. That statement is accurate, *see, e.g., United States v. Carraway,* 108 F.3d 745, 750 (7th Cir.1997) ("[p]roof of a formal agreement to conspire is, of course, not required"), and we do not see how the jury might have been misled by it.

■ The prosecutor also told the jury that a conspiracy can be established by "long term relationships, long term dealing with one another, standardization of their dealing with one another, like the fronting, like extending credit or other evidence of trusting one another in this relationship." R. 184 at 174–75. Obviously, a long-term,

trusting relationship does not by itself a conspiracy make, but here again the context of the remark reveals that the government was not misleading the jury. The prosecutor first told the jury that "the existence of a conspiracy, the existence of an agreement itself[,] can be proven through circumstantial evidence." R. 184 at 174. That is an accurate statement of the law and consistent with the court's instruction to the jury on this point. R. 184 at 230. It was then that the prosecutor went on to identify, in the quoted remark that Brisco challenges, the kinds of circumstantial evidence that might show that there was a conspiracy between Brisco and the other people who cooperated with him in the trafficking of narcotics. We have cited the same factors as relevant to the existence or not of a conspiracy, *see, e.g., United States v. Contreras,* 249 F.3d 595, 599 (7th Cir.2001), and consequently find nothing improper in the statement.

At other points in closing, the prosecutor advised the jurors that "[w]hat you need to find is that the conspiracy involved more than five kilograms of cocaine" (R. 184 at 204), and that his role as a prosecutor was to "present the facts [to the jury] and ask [the jury] to make a decision on those facts" (R. 184 at 224). Placed in context, the first statement was not an actual direction to the jury as to what it should find, but an accurate reference to the legal proposition that the drug quantities alleged in the indictment (in excess of five kilograms of cocaine and fifty grams of cocaine base) had to be proven (and found) beyond a reasonable doubt. *See Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *see also United States v. Wallace,* 276 F.3d 360, 369 (7th Cir.), *cert. denied,* 536 U.S. 924, 122 S.Ct. 2592, 153 L.Ed.2d 781 (2002) ("to the extent a drug quantity affects a defendant's statutory maximum sentence, it is

an aspect of the crime that … must be proven beyond a reasonable doubt"). The second statement could only be though misleading to the extent it suggests that what the prosecution presents to the jury is indeed fact (*i.e.*, the truth) as opposed to evidence which the jury is free to believe or not. We very much doubt that the jury, which was properly instructed that "[its] first duty [was] to decide the facts from the evidence in the case," R. 184 at 228, would have been led astray by the prosecutor's statement. Any inaccuracy in the statement certainly does not rise to the level of plain error.

At other points, the prosecutor argued to the jury that the female witnesses who had had close personal relationships with Brisco "didn't profit" from the conspiracy but rather were hurt by it (R. 184 at 170), and that Brisco may have taken advantage of their low self-esteem and manipulated them into performing illegal tasks for him (R. 184 at 222). Brisco may disagree with these assertions, but the prosecution is entitled to argue inferences that reasonably may be drawn from the evidence, *see Graham*, 315 F.3d at 782, and we view these assertions as plausible in light of the testimony that the jury heard.

■ Finally, Brisco takes issue with the prosecutor's contentions that Brooks was obtaining his cocaine from Brisco (R. 184 at 191) and that Sara Weyer, who took a number of trips to Los Angeles to pick up cocaine for Brisco, likely had obtained a total of more than five kilograms of cocaine on those trips (R. 184 at 204). Again, we view these as inferences that are fairly supported by the record. There was, as we have noted, ample testimony to the effect that Brisco was Brooks' supplier of cocaine. *See, e.g.,* R. 179 at 41, 84, 120, R. 178 at 105. And it is a fair reading of Weyer's testimony that she carried a total of six kilogram-sized packages of cocaine

with her from Los Angeles on the four trips that she took for Brisco. R. 178 at 127, 130, 134, 140, 154. These arguments were therefore not improper.

C. Restrictions on Communications with Counsel

■ On the third day of trial, while the government was still presenting its case against Brisco, Brisco's counsel asked for an ex-parte conference with the judge in which he voiced concern that Brisco (and in some instances members of his family) were insisting that he ask questions of the government's witnesses that counsel believed were inappropriate, irrelevant, or not helpful to Brisco's case. After listening to both Brisco and his attorney at length, the judge satisfied herself that Brisco's counsel was proceeding appropriately, that the types of questions Brisco wanted asked were not proper and/or were not potentially helpful to Brisco, and that Brisco, notwithstanding his dissatisfaction with his appointed attorney, did not wish to proceed pro se. At the conclusion of this conference, the judge instructed Brisco to cease his efforts to dictate the course of his counsel's questioning. R. 178 at 30–31 ("We are going ahead right now. We are going ahead with Mr. Peterson [Brisco's counsel] and you are not to tell Mr. Peterson what he can ask and what he cannot ask. You must sit quietly."). On subsequent occasions, when either the court itself noticed that Brisco was distracting his attorney while the government was examining its witnesses or Brisco's counsel brought such interruptions to the court's attention, the judge instructed Brisco to remain quiet so that his counsel could absorb the testimony and prepare for cross-examination. R. 178 at 35–36, 59–61, 178–79. Brisco contends that this limitation on communications with his lawyer effectively denied him the assistance of

counsel to which the Sixth Amendment entitles him.

Although a defendant has a "right to unrestricted access to his lawyer for advice on a variety of trial-related matters," *Perry v. Leeke*, 488 U.S. 272, 284, 109 S.Ct. 594, 602, 102 L.Ed.2d 624 (1989), that right may, under certain circumstances, yield to the trial court's power to deal with disruptive behavior in the courtroom, *see Illinois v. Allen*, 397 U.S. 337, 343–44, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970). *See also Norde v. Keane*, 294 F.3d 401, 413–14 (2d Cir.2002); *Moore v. Purkett*, 275 F.3d 685, 688 (8th Cir.2001). We view the modest restriction that the court imposed on Brisco's communications as a reasonable measure designed to prevent disruption of his own counsel's performance, and in that respect it was a measure that was intended to *protect* Brisco's Sixth Amendment right to effective representation. Notably, the court did not preclude Brisco from taking notes as the government's witnesses testified and passing those notes along to his counsel, nor did it prohibit Brisco from orally communicating his thoughts about these witnesses after they had concluded their testimony on direct. Indeed, the court specifically suggested to Brisco and his attorney that counsel consult with Brisco before concluding his cross-examination of each witness so that Brisco might have the opportunity to raise any issues he thought his attorney should address. R. 178 at 180. In response, both Brisco and his attorney said, "That's fine." *Id.* The limitation therefore did not, on its face, preclude Brisco from consulting with his attorney in an appropriate manner. *Cf. Moore*, 275 F.3d at 688–89 (trial court's refusal to let defendant and his attorney confer quietly during trial effectively precluded all communication, in view of defendant's inability to communicate in writing). Indeed, although he quarrels with the limitation, Brisco has not identified any way in

which it actually prevented him from conveying his ideas to his attorney in a timely fashion or otherwise hampered his attorney's ability to represent him.

## III.

### Brooks' Argument

■ Brooks raises a single issue on appeal related to his sentence. Congress has mandated that certain types of career offenders receive prison terms at or near the maximum terms authorized by statute. *See* 28 U.S.C. § 994(h). Section 4B1.1 of the Sentencing Guidelines embodies the Sentencing Commission's effort to comply with that mandate. In relevant part, this section sets forth a table of offense levels corresponding to various statutory maximum terms, and provides that "if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply." U.S.S.G. § 4B1.1(b). Having pleaded guilty to conspiring to distribute in excess of five kilograms of cocaine and more than fifty grams of cocaine base, Brooks was subject to a maximum prison term of life. *See* 21 U.S.C. § 841(b)(1)(A). The career offender guideline specifies an offense level of 37 for offenses subject to life prison terms. § 4B1.1(b)(A). As it turns out, however, this offense level was *less* than the otherwise applicable offense level of 40 calculated for Brooks pursuant to the Guidelines provisions governing narcotics offenses. Accordingly, the district court used the higher, otherwise applicable offense level rather than the one specified by the career offender guideline. Brooks contends that this was error, because although the career offender guideline expressly directs the court to use the offense level specified there if greater than the otherwise applica-

ble offense level, it does *not* expressly direct the court to use the otherwise applicable offense level if that level is the greater of the two.

Brooks' argument ignores the plain language of the career offender guideline. Section 4B1.1 directs the court to employ the offense level specified in the career offender table *if* that level is greater than the otherwise applicable offense level. That condition is not satisfied in this case—the level specified in section 4B1.1's table is *not* greater than the otherwise applicable level. Therefore, by its own terms, section 4B1.1(b) does not apply, and the court returns to the default, otherwise applicable offense level. Nothing in section 4B1.1 suggests that the court may ignore the condition and apply the offense level specified in its table even if it is lower than the offense level otherwise applicable. Indeed, doing so would defy the very purpose behind section 4B1.1 and the congressional mandate that it purports to implement, which is to ensure that persons who qualify as career offenders receive more severe prison terms that are as close to the statutory maximum as possible. Given the plain language and the evident intent of the career offender guideline, it comes as no surprise that we and other courts have uniformly rejected the reading of the guideline that Brooks advances. *See United States v. Ward,* 144 F.3d 1024, 1036 & n. 7 (7th Cir.1998); *United States v. Linnear,* 40 F.3d 215, 218 n. 1 (7th Cir.1994); *see also United States v. Ventura,* 353 F.3d 84, 90–91 (1st Cir.2003); *United States v. Zimmer,* 299 F.3d 710, 721 (8th Cir.2002), *cert. denied,* 537 U.S. 1146, 123 S.Ct. 952, 154 L.Ed.2d 848 (2003); *United States v. Gay,* 240 F.3d 1222, 1231 (10th Cir.2001); *United States v. Marrone,* 48 F.3d 735, 740 n. 9 (3d Cir.1995); *United States v. Robinson,* 935 F.2d 201, 205–06 (11th Cir.1991). We therefore conclude that the district court properly employed the otherwise applicable offense level rather than the lower level specified in section 4B1.1(b)(A).

### IV.

We affirm the defendants' convictions and sentences.